John Bartkowski for the Use of Stephanie Block, Appellee, v. The Commercial Casualty Insurance Company, Appellant.

**Gen. No. 37,241.**

498

Opinion filed June 15, 1934.

C. J. Bisesi and John A. Bloomingston, for appellant.

Earl J. Walker, for appellee.

Mr. Presiding Justice Sullivan delivered the opinion of the court.

This appeal seeks to reverse a judgment for $825 rendered against the Commercial Casualty Insurance Company (hereinafter referred to as the company) as garnishee in an action in garnishment brought in the name of John Bartkowski for the use of Stephanie

Block, and tried by the court without a jury. A tort judgment for $750 for injuries received by her had theretofore been secured by Stephanie Block against Bessie Meskis, Edward Bartkowski and John Bartkowski, predicated upon the alleged negligent operation of two automobiles, one of which was driven by Edward Bartkowski and owned by his father, John Bartkowski.

The affidavit in garnishment recited the entry of the judgment in favor of Stephanie Block against John Bartkowski and others, and charged that the company was indebted to John Bartkowski. Garnishee summons issued and interrogatories were propounded to which the garnishee answered that it was not indebted to and had no funds in its possession belonging to John Bartkowski.

The garnishee contends that the judgment creditor should have brought suit directly against it under the insolvency provision of the policy, and that garnishment does not lie to recover against the garnishee in a suit in the name of John Bartkowski for the use of Stephanie Block, as the garnishee owes nothing to Bartkowski or his son Edward; and that there was collusion between the assured and the judgment creditor which vitiated the coverage of the liability insurance policy issued by the company to John Bartkowski.

The theory of the beneficial plaintiff is that garnishment is an appropriate remedy in that the garnishee issued a policy of liability insurance covering the automobile in question belonging to John Bartkowski; that, while Edward Bartkowski, the son of John Bartkowski, and an additional assured under the policy, was driving his father's automobile an accident occurred through a collision with another machine operated by Bessie Meskis; that the beneficial plaintiff, who was a guest in the Bartkowski car, brought an action for the injuries sustained by her and recovered a judgment

for $750 against John Bartkowski and others; that no appeal was perfected from that judgment and an execution against Bartkowski was returned no property found; that the judgment not having been paid by Bartkowski, the garnishee was obligated to pay it by virtue of the terms of the insurance policy which is in evidence; and that there was no collusion between her and the assured.

It appeared that two other guests in his car, as well as Stephanie Block, brought actions against Bartkowski for injuries received by them as a result of the accident and the company refused to defend him in the three actions, although requested so to do, unless he signed the following agreement:

"It is hereby agreed that the Commercial Casualty Insurance Company by furnishing attorneys for the undersigned and proceeding with the defense of the following cases:

Stella Guminski v. John Bartkowski,
Stephanie Block v. John Bartkowski,
Celia Kusawa v. John Bartkowski,

does not waive any of its rights under policy number A-31531 issued to John Bartkowski, the undersigned." Bartkowski refused to sign the agreement and the company refused to defend him in Stephanie Block's suit.

It also appeared that the company was notified of the accident within four or five days of its happening; that the original suit herein was commenced April 9, 1930; that shortly after the summonses in that suit were served upon him and his son, Bartkowski's daughter delivered them to the company's office, and that April 19, 1930, the company returned the summonses and notified Bartkowski by letter that it denied "any and all liability under the terms of your policy and . . . the Commercial Casualty Insurance Company will not defend these suits in your behalf or in

behalf of Edward Bartkowski," without assigning any reason for its action.

The attorney for the company testified in its behalf of certain conduct of the attorney who filed the original suit for Stephanie Block, as well as of the first attorney for the Bartkowskis in the beneficial plaintiff's action against them, and of the attorney who represented the Bartkowskis in the trial of that case, which indicated what appeared to him and the garnishee as such collusion between the parties as justified the company's refusal to defend Bartkowski unless he signed the reservation of rights agreement presented to him by the company as heretofore set forth.

By its testimony the garnishee also sought to show that Bartkowski did not "render to the Company all co-operation and assistance in his power" as provided by the contract of insurance.

The evidence disclosed that Mr. C. G. Palmer, Stephanie Block's first attorney, who had previously represented Bartkowski in another angle of the case growing out of the same accident, and against whom the original charge of collusion was directed, withdrew from the case shortly after the suit was commenced, when he was advised that his conduct was considered unethical by the company. Attorney Earl J. Walker appeared for her April 28, 1933, and has represented her in this litigation since that time. His conduct is not questioned. When the company refused to defend him Bartkowski retained as his attorney one Harry Ehrlich, who was or had been an office associate of Mr. Palmer, who filed the suit for Stephanie Block. Attorney Ehrlich withdrew from the case before it was tried. Bartkowski then retained Mr. Fred Rohde, a former office associate of Mr. Palmer as his lawyer, and Bartkowski and his son were represented at the trial of the original suit by him and Mr. Weintraub, an attorney associated with him.

As to the garnishee's contention that there was fraud and collusion between Bartkowski or his son and the plaintiff or the attorneys in the original action, it is sufficient to state that there is no evidence in the record that even tends to show that the case was improperly tried or that Stephanie Block, the Bartkowskis or the attorneys who tried their case were guilty of fraud or of one collusive act. A diligent search of the record fails to reveal any lack of co-operation with the company on Bartkowski's part. In any event, after an insurer expressly disclaims liability and refuses to defend, there is practical unanimity among the authorities that it cannot raise the issue of lack of co-operation in the absence of a showing of fraud or collusion. There was evidence in the record that the company based its original charge of collusion on the purported act of the agent of the company who sold the policy to Bartkowski in issuing it after the occurrence of the accident as of a date prior to same. There was no substantiation of this charge if it was, in fact, ever made. The evidence disclosed that the accident was promptly reported and that the summonses served upon him and his son were promptly delivered to the company by Bartkowski. The only evidence that could possibly be considered as justifying even an inference of lack of co-operation on the part of Bartkowski, who could neither speak, read nor write the English language and who could transact business only through an interpreter, was his refusal to sign the stipulation prepared and presented to him by the garnishee which provided that, in the event it defended him, it waived none of its rights against him by so doing and his refusal to sign an affidavit for the continuance of Stephanie Block's suit against him. His refusal to sign the first was predicated, according to the evidence, on what he considered his right to insist on the full protection of the policy, and his refusal to sign the second was

justified by him on the ground that it contained statements that were not true. The trial judge saw and heard the witnesses and it does not appear to us that the findings of the court on the issues of collusion and lack of co-operation were against the manifest weight of the evidence.

The following are the provisions of the policy material to this controversy:

"COMMERCIAL CASUALTY INSURANCE COMPANY,
(herein called the Company)
"INSURING AGREEMENTS.

"A. PUBLIC LIABILITY: To PAY, provided specific premium charge is made in Item 1-A of the Warranties, any loss or expense by reason of the liability imposed by law upon the Assured for damages on account of bodily injuries or death resulting therefrom accidentally suffered, or alleged to have been suffered, by any person or persons, by reason of the ownership, maintenance or use of any of the automobiles described in said Warranties . . . .

"IN ADDITION TO THE ABOVE THE COMPANY AGREES:

"(1) EXPENSES AND COSTS: To PAY the expense of litigation and all costs taxed against the Assured in any legal proceeding defended by the Company, and all interest accruing after entry of any judgment until the Company has paid, tendered or deposited in Court such part of such judgment as does not exceed the limit of the Company's liability as expressed in this policy.

"(2) SERVICE: To INVESTIGATE at its own cost any accident (to which this policy applies) reported to the Company and to settle any claim as the Company may deem advisable; and if suit is brought against the Assured on account of such an accident, to defend such suit even if groundless, false or fraudulent, in the name and on behalf of the Assured unless or until the Company shall elect to effect settlement thereof.

## "Conditions

"C—Insolvency or Bankruptcy of Assured. The insolvency or bankruptcy of the Assured shall not release the Company from the payment of damages for injuries sustained or loss occasioned during the life of the policy, and in case execution against the Assured is returned unsatisfied in an action brought by the injured, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person or his or her personal representative against this Company under the terms of this policy, for the amount of the judgment in the said action not exceeding the amount of this policy.

"D—Reporting Accidents, Losses, Claims and Suits. Co-Operation of Assured. Upon the occurrence of an accident covered by this policy the Assured shall give immediate written notice thereof with the fullest information obtainable at the time, to the Company or its duly authorized representative. If a claim for damages is made upon the Assured on account of such accident, the Assured shall give like notice thereof with full particulars. The Assured shall at all times render to the Company all co-operation and assistance in his power.

"Notice given by or on behalf of the Assured to any authorized Agent of the Company with particulars sufficient to identify the Assured, shall be deemed to be notice to the Company. Failure to give any notice required to be given by the policy within the time specified therein shall not invalidate any claim made by the Assured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

"If suit is brought against the Assured to enforce a claim for damages covered by this policy, the As-

sured shall immediately forward to the Company every summons or other process as soon as the same shall have been served on the Assured.

"The Assured, whenever requested by the Company, shall aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, but the Assured shall not voluntarily assume any liability or interfere in any negotiation for settlement, or in any legal proceeding, or incur any expense, or settle any claim, except at the Assured's own cost, without the written consent of the Company previously given, except that, as respects liability for personal injuries covered hereunder, the Assured may provide at the Company's expense such immediate surgical relief as is imperative at the time of the accident.

"G. ASSURED'S RIGHT OF RECOVERY. No action shall lie against the Company to recover for any loss or expense covered by this policy, arising or resulting from claims upon the Assured for damages, unless it shall be brought by the Assured for loss or expense actually sustained and paid in money by him after actual trial of the issue, nor unless such action is brought within two years after payment of such loss or expense; nor for any other loss or damage covered by this policy unless action is brought within two years after the occurrence causing the loss or damage."

The policy in the instant case is as to its material provisions, with the exception of the so-called insolvency clause which we will refer to later, substantially similar to the policy considered in *Kinnan v. Hurst Co.*, 317 Ill. 251, where the company also disclaimed liability and refused to defend an action brought by an injured party against the assured. While in that case the injured party filed a creditor's bill to subject the indebtedness of the company to the assured to the

payment of the assured's debts, the reasoning of the court is equally applicable to the situation presented by this action in garnishment where it is sought to accomplish the same result. At pages 256, 257, 258, the court said:

"Suit was brought against the assured for damages for bodily injuries alleged to have been accidentally suffered by an employee of the assured, and this suit, even though groundless, the defendant in error was bound to defend unless and until it chose to settle it. It did not do this, and thereupon the assured defended the suit, with the result which has been stated. What was the effect of this breach of contract by the defendant in error? It had agreed to indemnify the assured against loss for liability imposed by law upon the assured on account of bodily injuries actually received, only when payment had been actually made by the assured of a judgment recovered against it in an action defended by the defendant in error. The agreement did not extend to any other judgment, for the defendant in error expressly agreed to investigate all accidents reported to it, and, in case of suit brought, to defend it, even if groundless, unless and until the defendant in error should elect to effect a settlement, while at the same time the assured agreed not to settle any claim or interfere in any negotiation for settlement or legal proceeding. The foundation of the rights of the parties under the contract was the assumption by the defendant in error of the investigation of all accidents, the negotiation of all settlements and the defense of all suits of the character mentioned in the policy, and the exclusion of the assured from all interference in any of these matters except to aid the defendant in error at its request. The refusal of the defendant in error to defend the suit of the plaintiff in error against the assured would have destroyed the foundation of the mutual obligation of the parties.

The policy contemplated the payment of a judgment against the assured only in a case defended by the defendant in error, and its refusal to defend therefore deprived the former of its remedy under paragraph 1 and condition 1 of the policy, because such refusal prevented a compliance with the condition precedent of the payment of a judgment recovered by the assured after the trial of an action defended by the defendant in error. This repudiation of the fundamental obligation of the contract completely deprived the assured of its benefit and was a waiver of the performance by the assured of the conditions precedent to a recovery of the amount it would be entitled to if those conditions had been performed.

"Where one party to a contract repudiates its obligation and declares his intention no longer to be bound by it, the other party may, if he thinks proper, treat the repudiation as a wrongful putting of an end to the contract and bring an action at once, in which he may recover damages as for a present breach. (*Lake Shore and Michigan Southern Railway Co. v. Richards,* 152 Ill. 59.) The defendant in error was bound to defend the action without interference by the assured unless and until it effected the settlement. By its failure to do so it deprived the assured of the remedy provided by the terms of paragraph 1 and condition 1. Had it defended successfully the assured would have been relieved of all liability. Had its defense been unsuccessful the assured would have been able to require the defendant in error to pay it the amount of the judgment to the extent of $5,000, with costs and interest. Having deprived the assured of this remedy the defendant in error became liable to the assured for its value,—that is, for the amount which the defendant in error would have been required to pay if it had performed its contract. This was the judgment of the Supreme Court of the United States in *St. Louis*

*Dressed Beef Co. v. Maryland Casualty Co.,* 201 U. S. 173, which was an action against the casualty company on a liability policy similar in all its provisions material to the case to the policy in this case.''

In the case of the *St. Louis Dressed Beef Co., supra,* where suits were brought against the assured for personal injuries covered by the policy there in question, and upon the refusal of the insurance company to defend, the assured settled and paid the claims, the Circuit Court of Appeals of the United States certified to the Supreme Court of the United States certain questions of law indispensable to the decision of the case, among which the following are pertinent to the case at bar:

''Did the denial of all liability by the assurer and its refusal to defend the suits constitute such a breach of the contract on its part as released the assured . . . from the provision that no action should lie against the assurer unless for loss actually sustained and paid by the assured after a trial of the issue?

''Was this provision waived by the assurer's denial of liability under the policy and its failure and refusal to defend the suits against the assured?

''Was the right of the assurer to insist on the condition of rendition of judgment after trial and its satisfaction by the assured dependent upon the assurer's defense of the action against the assured?

''Was the assurer's denial of liability a waiver of the condition respecting the rendition of judgment after trial and its satisfaction by the assured?''

The court answered all of the foregoing questions in the affirmative so far as the questions were warranted by the facts set forth, and in its decision enunciated the following doctrine at pages 181 and 182:

''Looking at the substance of the matter, it makes no practical difference, no difference in the amount of the defendant's liability, whether we say that the

defendant by its conduct made performance of the conditions by the plaintiff impossible, and therefore was chargeable for the sum which it would have had to pay if those conditions had been performed, or answer, in the language of the questions, that performance of the conditions was waived. The sole difference would be in the form of the declaration. In either case the plaintiff would declare upon the policy, only the breaches assigned would not be the same. In the former the breach would be the refusal to defend, in the latter the refusal to pay. If it is necessary to consider the question in a technical aspect, we think that the plaintiff was entitled to treat the contract as on foot, notwithstanding the defendant's act, and go on with it *cy-pres*. Under the circumstances it could not comply literally with the words and was justified in doing the best thing that could be done for the interest of both. The defendant by its abdication put the plaintiff in its place with all its rights. To limit its liability as if its only promise was to pay a loss paid upon a judgment is to neglect the meaning and purpose of the reference to a judgment, and even the words of the promise. The promise in form is to indemnify against loss by certain kinds of liability. The judgment contemplated in the condition is a judgment in a suit defended by the defendant in case it elects not to settle. The substance of the promise is to pay a loss which the plaintiff shall have been compelled to pay, after such precautions and with such safeguards as the defendant may insist upon. It saw fit to insist upon none.''

The assured had a cause of action against the insurance company for its refusal to defend the suit brought against him by the injured party, the measure of damages in which was the amount recovered against him, together with interest on that amount from the date of judgment and costs. The injured party had

the right to have the indebtedness which gave rise to this cause of action applied to the payment of her judgment, for the same reason that any other judgment creditor, under such circumstances, has the right to have the property of his judgment debtor applied to the payment of his debts. (*Kinnan v. Hurst Co., supra.*)

In discussing a similar situation in *Matter of Empire State Surety Co.*, 214 N. Y. 553, the court said at pages 564 and 565:

"The cases which have decided that where the company has not been guilty of a breach of contract it is liable only to pay the assured the loss which has been sustained as a result of a judgment recovered against him (citing cases) are without application when the company itself has been guilty of a breach of the contract or has failed to perform its conditions. . . . While the amount of the company's liability to these policyholders may not at that time have been liquidated, such liability had ceased to be contingent. When an accident against the consequences of which the assured is insured has happened and suit has been commenced against the assured, the insurer, under the terms of the policy, incurred the obligation of assuming the defense of such a suit. When the insurer violated the contract and refused to defend the suit or went into liquidation, thus making it impossible for it to undertake the defense of such suit, it incurred a liability which was not contingent. Where the insurer has failed to perform its contract and the accident against the consequences of which the assured is insured has happened, the liability of the insurer is certain. In such a case the liability ceased to be contingent although the amount of the liability may have been unliquidated. The insurer having failed to perform its obligation, the *amount* of the liability would not become fixed until the loss which the assured sustained

was determined, but the liability of the insurer would be certain and not contingent from the moment that it failed to perform its obligation to defend the suit brought against the assured.''

The failure of the company to perform its obligation to defend the suit brought by the injured party against the assured ''even if groundless, false or fraudulent,'' having fixed its liability to the assured, the amount of such liability was established and rendered certain by the judgment against Bartkowski in the municipal court from which no appeal was taken, and, in our opinion, the judgment is an ''indebtedness'' as contemplated by our Garnishment Act, Cahill's St. ch. 62. Garnishment has repeatedly been held to be an appropriate remedy to enforce similar judgments against casualty and other insurance companies.

The beneficial plaintiff's demand arises from the judgment against Bartkowski, and in a garnishment proceeding such as this one the trial court is obliged to determine what, if anything, is due from the garnishee to the insured under the terms of the contract. This action will lie even though liability is denied. (*Wold v. Glens Falls Indemnity Co.*, 269 Ill. App. 407; *Phelps v. Columbia Phonograph Broadcasting System*, 255 Ill. App. 294.) The contract of indemnity is against loss by casualty and is absolute upon the happening of the loss, provided there is no breach of the conditions of the policy by the assured. (*Hanover Fire Ins. Co. v. Connor*, 20 Ill. App. 297.)

The garnishee earnestly insists that Stephanie Block could not proceed against it except under clause ''C'' of the policy, which it points out afforded her a direct right of action against the insurer for the amount of her judgment against the assured. It is true that, under the terms of the policy, she had the right to maintain an action directly against the insurance company to enforce her judgment against Bartkowski be-

cause of his insolvency, but we are constrained to. hold that such right of action was not exclusive.

The garnishee while conceding in effect the beneficial plaintiff's right to the payment of her judgment, in the absence of proof of fraud, if she had proceeded directly against it as provided in clause "C" of the policy, asserts that it is fearful that if the judgment in this cause is affirmed it will be compelled to pay the amount of same to Bartkowski, the nominal plaintiff, who has suffered no loss and who would in all likelihood retain the amount so paid. It asserts further that it would in that event be subjected to another action by Stephanie Block under the insolvency provision of the policy. This position is untenable and defendant may relieve itself of any anxiety in that regard by paying the amount due under the judgment to the beneficial plaintiff and it will be fully protected under the law.

We fail to perceive what particular difference it makes to the company whether the beneficial plaintiff's judgment against the assured is enforced through garnishment proceedings or through direct action by her against the company. In no event could it be compelled to assume the liability of this judgment and meet its obligation more than once. Citing with approval the *Kinman, St. Louis Dressed Beef* and *Matter of Empire State Surety Company* cases, *supra,* and sustaining the right to enforce a judgment under a policy similar to that involved here, except for the insolvency clause, through garnishment process, it was held in the recent case of *Goerss v. Indemnity Co. of America,* 223 Mo. App. 316, 3 S. W. (2d) 272, at pages 274, 275, 276:

"When technicality is invoked, however, to avoid an obligation morally established, the common law usually finds in its arsenal some weapon with which to confront it and to make that a legal which is already

a moral debt. The courts of this country have frequently been concerned with policy provisions such as are under review in this case, and they have usually found a way, in pursuit of manifest justice, by one process of reasoning or another, to compel the insurer to answer for the insured's liability, whether the insured had paid his liability or not. . . . A definite promise made in the insuring clause cannot be defeated by denying to the insured in a subsequent clause, under the guise of a limitation, the right to bring an action for the enforcement of the promise. . . . But in so far as the no-action clause undertakes to limit the insurer's liability merely to an obligation to reimburse the insured for money paid by him in discharging his liability, it is out of harmony with the insuring clause. . . . It follows under the conceded facts in the present case that, when the plaintiff commenced his garnishment proceeding, the garnishee was indebted to the insured under its policy, and that the judgment rendered by the court below in favor of the plaintiff against the garnishee is right and should be affirmed.''

We have carefully read and considered the cases cited by counsel, and while we appreciate the fact that there is considerable conflict among the authorities on some of the questions presented for our consideration we are satisfied that the conclusions reached by us are supported by the weight of authority of this and many other jurisdictions.

For the reasons indicated herein the judgment of the municipal court is affirmed.

*Affirmed.*

GRIDLEY and SCANLAN, JJ., concur.