685 P.2d 750

**Michelle GILBREATH, a minor, Through her natural mother and next friend, Diana HASSL, formerly Diana Vayda; Diana Hassl, Plaintiffs-Appellees,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a corporation, Defendant-Appellant.**

No. 1 CA–CIV 5590.

Court of Appeals of Arizona, Division 1, Department D.

May 17, 1983.

Rehearing Denied July 7, 1983.

Review Granted Sept. 22, 1983.

Tucker & Shoush by Kenneth L. Tucker and Jon C. Dake, Phoenix, for plaintiffs-appellees.

Jones, Skelton & Hochuli by William R. Jones, Jr., Don C. Stevens, II, Edward G. Hochuli, Phoenix, for defendant-appellant.

OPINION

EUBANK, Judge.

This is an appeal by St. Paul Fire and Marine Insurance Company (Insurer) from a declaratory judgment in favor of Michelle Gilbreath (Michelle) holding the Insurer liable under its policy No. 689NA4386 which insured Paul and Helen Overdorff (Overdorffs), owners and operators of a business named Young Years Child Care, irrespective of Endorsement Number 2 of the policy.

Two issues are presented in this appeal:

(1) Whether the trial court erred in its interpretation of the Endorsement phrase "care, custody, or control of the insured" and in granting judgment to appellees based on that interpretation?

(2) Whether the trial court erred in denying appellant's collateral attack upon the portion of the underlying tort judgment in favor of appellee Diana Hassl individually?

The facts underlying this appeal are simple and not in dispute. Paul and Helen Overdorff were the owners of a sole proprietorship business named Young Years Child Care. They hired as an employee Pedro Giron. In December 1976, appellee Michelle Gilbreath, then eight years old, was sexually assaulted by Giron while he was in the course of his employment with Young Years.

Prior to the assault, on September 1, 1976, appellant St. Paul Fire and Marine

Insurance Company had issued to the Overdorffs its general policy upon the premises of Young Years for fire, bodily injury liability, property damage liability, and burglary loss. Endorsement Number 2 to the liability portion of the policy consisted of the following provision:

It is understood and agreed that no coverage is provided for bodily injury to persons who are in care, custody, or control of the Insured.

A lawsuit was filed by Michelle's mother, appellee Diana Hassl (Diana), individually and as representative for Michelle, against the Overdorffs and Giron, alleging negligence, breach of contract and intentional tort. The Overdorffs tendered the defense of the tort action to the Insurer based upon the above policy, but the tender was refused, based upon Endorsement Number 2. The Overdorffs then stipulated to a judgment against them in favor of Michelle for $100,000 and Diana for $45,000. The appellees then filed an action seeking a declaratory judgment finding coverage under the policy issued by the Insurer. Both Michelle and the Insurer filed motions for summary judgment. The trial court granted Michelle's motion and denied the Insurer's. The Insurer had also requested that the trial court declare void the judgment in favor of Diana based on an alleged error of law. This request was impliedly denied by the summary judgment in favor of Michelle and Diana and the denial of the Insurer's motion. Appellant timely appealed from the judgment.

The first issue is whether Endorsement Number 2 to the liability policy was correctly interpreted not to exclude coverage for the liability sustained by the Overdorffs in the underlying tort judgment. The Insurer argues that the provision unambiguously excludes liability because Michelle was clearly in the care, custody or control of Paul and Helen Overdorff operating the business known as Young Years Child Care. The Insurer further argues that anyone in the care of Young Years is in the care of the Overdorffs, whether she is in the personal care of the Overdorffs, or in the care of an agent or employee of the Overdorffs. The Insurer argues appellees' construction would require the wording "in the *personal* and physical care, custody or control of the Insured."

Michelle and Diana argue that the key word in interpreting the exclusionary phrase is the word "insured." They argue that Giron clearly is not an insured under the policy. They reason that Insurer's construction would require the wording, "in the care, custody, or control of the Insured *and his agents*." At any rate, appellees argue the exclusion is ambiguous, and therefore must be construed against the interpretation argued by the Insurer.

In *Cagle v. Home Insurance Co.*, 14 Ariz.App. 360, 483 P.2d 592 (1971), we quoted the Arizona Supreme Court's statement regarding the rules of construction applicable to an insurance contract as follows:

"In the absence of a statutory provision which will be read into each policy issued thereunder and cannot be contracted away by either party, *United States Fidelity and Guaranty Company v. Hirsch*, 94 Ariz. 331, 385 P.2d 211 (1963), the principles to be applied in construing an insurance policy have been stated by this Court, in a series of decisions and may be summarized as follows: The cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control. An insurance policy is a contract, and in an action based thereon the terms of the policy must govern. * * * [W]here the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there. [Citation of cases.]" *D.M.A.F.B. Federal Credit Union v. Employers Mut. Liability Ins. Co. of Wis.*, 96 Ariz. 399, 396 P.2d 20 (1964).

14 Ariz.App. at 363, 483 P.2d at 595. *See Dairyland Mutual Insurance Co. v. An-*

*derson,* 102 Ariz. 515, 517, 433 P.2d 963, 965 (1967). A.R.S. § 20–1119, involving the construction of insurance policies, provides: "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement or application attached to and made a part of the policy." Regarding endorsements to the contract of insurance, the rules of construction are the same as outlined in *Cagle.*

The intention of the parties to an insurance contract is controlling, *D.M.A.F.B. Fed. Cr. U. v. Employers Mut. L. Ins. Co. of Wis.,* 96 Ariz. 399, 402, 396 P.2d 20, 22–23 (1964), and all of the policy, including the endorsement must be read as a whole. *Droz v. Paul Revere Life Insurance Company, supra* [1 Ariz. App. 581, 405 P.2d 833 (1965)]. "In so far * * * as a rider or indorsement modifies, qualifies, or restricts the terms of the original policy, the rider or indorsement controls." 1 Couch on Insurance 2d, § 15.30, at 701; and *see,* to the same effect, *Lax v. Fidelity and Casualty Company of New York,* 74 N.M. 123, 391 P.2d 411, 413 (1964), and *McConnell v. Underwriters at Lloyds of London,* 56 Cal.2d 637, 16 Cal.Rptr. 362, 364, 365 P.2d 418, 420 (1961).

*Reserve Insurance Co. v. Staats,* 9 Ariz. App. 410, 412, 453 P.2d 239, 241 (1969).

### THE INSURANCE CONTRACT

Insurer's policy No. 689NA4386 is divided into an Index page, a Declarations page, a General Conditions section and four Insuring Agreements described generally above. The named insured in the Declarations are:

"Paul R. and Helen Overdorff,
DBA: Young Years Child Care
3645 West Bethany Home Road,
Phoenix, Arizona, 85019"

On the Declarations page, the form of the named insured's business is marked Individual, while the boxes for indicating Co-partnership, Corporation, Joint Venture and Other are left blank. The Declarations state that, "The limit of the Company's liability for each coverage of each Insuring Agreement or endorsement shall be as indicated therein, subject to all the terms of this policy having reference thereto."

Insuring Agreement 36 contracts to cover the named insured under Coverages "B. Bodily Injury Liability Other Than Automobile" and "D. Property Damage Liability Other Than Automobile." The coverages are described as follows:

2. Coverages

A. ...

B. Coverage B; Bodily Injury Liability Other Than Automobile.

Coverage D; Property Damage Liability Other Than Automobile.

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

Coverage B. Bodily injury; or

Coverage D. Property damage;

to which this Insuring Agreement applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

The Agreement also provides:

5. SPECIAL CONDITIONS.

A. Persons Insured.

Each of the following is an insured under this Insuring Agreement to the extent set forth below:

\* \* \* \* \* \*

As respects Coverages B and D.

(e) If the Named Insured is designated in this Policy as an individual, the person so designated but only with respect to the conduct of a business of

which he is the sole proprietor, and the spouse of the Named Insured with respect to the conduct of such a business;

(f) If the Named Insured is designated in this Policy as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(g) If the Named Insured is designated in this Policy as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

\*    \*    \*    \*    \*    \*

This Insuring Agreement does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this Policy as a Named Insured.

In addition to the above, the Agreement contains three Endorsements which modify and change the terms of Agreement 36. The first one makes Ray R. and Phyllis Crouch, lessors of the land and building where the Young Years Child Care business is conducted, Persons Insured. It states,

It is agreed that the "Persons Insured" provision is amended to include as an Insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the Named Insured ....

The second Endorsement, is set out at the beginning of this opinion and is subject to extensive argument by the parties. For convenience, it states: "It is understood and agreed that no coverage is provided for bodily injury to persons who are in care, custody, or control of the Insured." The final Endorsement limits the Insurer's liability under the Agreement as follows:

It is hereby understood and agreed that as respects to Coverages B and D of the Comprehensive General and Automobile Liability Insuring Agreement that coverage is limited to liability arising out of the ownership, maintenance and use of the insured premises located:

3645 West Bethany Home Road
Phoenix, Arizona

### IS THE COVERAGE CLEAR OR AMBIGUOUS?

To summarize, the Insurer contends that the trial court erred in not granting its motion for summary judgment because the second Endorsement is clear in excluding liability. It argues that since Michelle was assaulted when she was left in the care, custody or control of the Overdorffs operating their business known as Young Years Child Care, the exclusion should be applied.

Michelle and Diana, on the other hand, contend that since the employee of the Overdorffs assaulted Michelle, and since he was not "the insured" defined by the Insuring Agreement 36 at 5.A. Special Conditions, (e), *supra*, because he was not "the person so designated," and since the Overdorffs were the only "insured," that Pedro Giron's assault on Michelle was covered by the Agreement for the reason that Michelle was in Pedro's care, custody or control and not in the Overdorffs' care, custody or control.

It is our opinion, that the second Endorsement is not ambiguous and we must reverse the judgment of the trial court.

We have set out the terms of the policy in some detail in order to demonstrate that Agreement 36 and the three Endorsements contemplate insuring both Overdorffs and their sole proprietorship business which they operated under the title of Young Years Child Care. In this context Endorsement Number 2 exclusion is not ambiguous.

Our analysis of the policy is as follows:

First, the Declarations page describes the named insured as the Overdorffs doing business as the Young Years Child Care at 3645 West Bethany Home Road. Second,

this business was conducted by the Overdorffs as an "individual" or sole proprietorship and was not conducted as a co-partnership, a corporation, a joint venture or an "other" form of business enterprise. Third, Special Conditions 5.A. (e), (f), and (g) of Agreement 36, *supra*, specifically limit the person insured on the basis of the form of doing business as marked on the Declarations page of the policy. Overdorffs' policy was marked "Individual," hence, 5.A. (e) is applicable. It reads, "(e) If the Named Insured is designated in this Policy as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named Insured with respect to the conduct of such business;" 5.A. (f) and (g), in turn, each relate to the other forms of doing business and are not applicable. Thus, it is clear to us that the Overdorffs are the named insured under coverage B and D but only with respect to the conduct of their business, Young Years Child Care, located at 3645 West Bethany Home Road. Fourth, the three Endorsements, *supra*, in turn all relate to the business. Number 1, adds the lessors as "Persons Insured" for liability arising out of the ownership of the Young Years Child Care premises which they leased to Overdorffs; Number 2, excludes coverage "for bodily injury to persons who are in care, custody or control of the Insured."; and Number 3, limits coverage "to liability arising out of the ownership, maintenance and use of the insured premises located: 3645 West Bethany Home Road, Phoenix, Arizona."

Michelle and Diana disagree with this analysis. As noted above, they contend that "the Insured" is limited by Special Conditions 5.A.(e), Agreement 36, *supra*, to the Overdorffs personally. Therefore, they contend, when Michelle was left "in the care, custody or control (Endorsement 2)" of Pedro Giron, an employee of the Overdorffs, Pedro was not a named insured but an employee, thus rendering the exclusions contained in Endorsement Number 2 inapplicable.

In our opinion, this analysis constitutes a strained reading of the policy, agreement and endorsements. Their conclusion is partly reached by placing emphasis on the word "individual"; however, as shown above this word merely indicates the form in which the business is conducted. In a sole proprietorship or individual business, tort liability runs generally to the ownership interest. The business and the owners are one and the same in both legal and economic theory. Similarly, the clause "the person so designated" relates to the Overdorffs and their liability with respect to the conduct of a business of which they are the sole proprietors. Special Conditions 5.A.(e), *supra*. Thus, Michelle and Diana arrive at their construction of the Agreement by placing undue emphasis on separate words and clauses without reading them in context.

The same is true with regard to their contention that Michelle was left in the care, custody or control of Pedro Giron rather than the care, custody or control of the Overdorffs and the Young Years Child Care. No claim is made that Pedro was an independent contractor; it is clear from the briefs that he was merely an employee of the Overdorffs. It is also undisputed that Pedro assaulted Michelle while in the course of his employment. Thus, Pedro was acting for the Overdorffs and their business and he committed the tort against Michelle while she was in the "care, custody or control" of the Overdorffs' sole proprietorship business—Young Years Child Care, 3645 West Bethany Home Road.

Michelle and Diana further argue that Endorsement Number 2 is ambiguous because if the Insurer had intended to exclude employees such as Pedro then it could have clearly done so by stating "in the care, custody or control of the insured *and his agents*" or by including within Special Conditions 5.A.(e), *supra*, definition of "Insured" the language: "the person so designated *and his agents*." There is no question that such additional language might have successfully headed off this lawsuit; however, that is not the test. As set out above, the question is whether the

policy, agreement and endorsements are clear when read together. We hold that they are. The Overdorffs and their business were insured. Endorsement Number 2 excluded coverage for bodily injury to persons who are in the care, custody or control of the Insured. Michelle was the Overdorffs' responsibility; she was in the care, custody or control of them and their business; therefore her tort action is excluded from coverage by Agreement 36 and Endorsement 2.

We are supported in our holding by Division 2 of this court and its opinion in *Cindrich v. Fireman's Fund Insurance Co.,* 6 Ariz.App. 371, 432 P.2d 919 (1967). There Judge Molloy addressed a liability insurance policy exclusionary clause which excluded a truck "in charge of" or "in the care, custody or control" of the insured at the time it was destroyed by fire. The truck was parked in the insured's yard at the time it was destroyed. He had decided not to purchase it and it was to be returned to the owner. The court held that the exclusions were not ambiguous and since the insured possessed the truck by a clear bailment relationship from the owner the exclusion governed. The same can be said for the case *sub judice.* Since the care, custody or control of Michelle was in the Overdorffs when she was assaulted by their employee, the tort damages are excluded.

Another helpful case from the same court is *General Insurance Co. of America v. American Employer's Insurance Co.,* 11 Ariz.App. 38, 461 P.2d 517 (1969). In this case the court was faced with the question of which of two insurance companies was primarily liable on their policy for damages resulting from the death of a county employee, who was electrocuted when the general contractor's crane operator permitted the crane to come in contact with overhead electric wires. The general contractor was insured by *General* and Pima County by *American.* American's policy contained an exclusion with regard to premises owned, rented, or *controlled* by the person or employer of the person against whom the claim is made. Discussing "controlled" the court said:

> The word "control" has no strict or technical definition which necessarily excludes all others. It means power or authority to manage, direct, superintend, restrict, regulate, direct, govern, administer or oversee. *Pacific Employers Insurance Company v. Hartford Accident and Indemnity Company,* 228 F.2d 365 (9th Cir.1955). The word "control" as used in the policy now being considered by the court does not import a proprietary interest. *Hartford Accident and Indemnity Company v. Shelby Mutual Insurance Company,* 208 So.2d 465 (Fla. App.1968). Accord, *Rose v. Union Gas & Oil Company,* 297 F.16 (6th Cir.1924); *American Fidelity & Casualty Company v. Traders & General Insurance Company,* 160 Tex. 554, 334 S.W.2d 772 (1959).
>
> The word "control" as used in this policy does not mean exclusive possession, but such measure of control, jointly with others, as is consonant with the work to be done. Hartford Accident and Indemnity Company v. Shelby Mutual Insurance Company, supra. We believe it is useless to attempt a definition of the word "control" that would be applicable to all cases involving the same policy phrase since the very nature of the word itself will require ad hoc determinations.

11 Ariz.App. at 41, 461 P.2d at 520. Having said the above, the court found that the general contractor did have control when the accident occurred even though the project had been completed and finally accepted and the crane operator was merely assisting in removing two remaining pipes. Thus the exclusion in *American's* policy was enforced and *General* was found liable. Returning to the instant case, under the above definitions, Overdorffs certainly exercised control over Michelle through their business enterprise.

Michelle and Diana rely strongly on *Holter v. National Union Fire Insurance Co. of Pittsburgh, Pa.,* 1 Wash.App. 46, 459 P.2d 61 (1969). In *Holter* the policy exclusion involving property in the care, custody

or control of the insured was held not to exclude coverage because the employees of the insured were not defined as "insured" in the policy. Our reading of *Holter* raises certain problems precluding its use. First, it fails to discuss two prior Washington Supreme Court cases which upheld the exclusion in a policy where the property is in the care, custody or control of the insured and where agents or employees of the insured were in actual possession of the property involved in the loss. *Madden v. Vitamilk Dairy, Inc.*, 59 Wash.2d 237, 367 P.2d 127 (1961); *S. Birch & Sons Construction Co. v. United Pacific Insurance Co.*, 52 Wash.2d 350, 324 P.2d 1073 (1958). Further, in *Madden*, the Washington Supreme Court held that the words "care, custody or control" are "words of common usage and connotation in the vocabulary of laymen. We are of the opinion that they are unambiguous and must be given their plain and ordinary meaning." Second, the *Holter* court's policy definition of an "insured" is different from the definition of insured in the agreement *sub judice*. As discussed above, the Overdorffs' Agreement 36 covers both them and their sole proprietorship. Third, since the *Holter* case turns solely on the definition of insured in that policy, it is of little assistance to us in light of Agreement 36. Finally, we note that in a later Washington Court of Appeals case, that court found that a "care, custody or control" exclusion was not ambiguous as used in a homeowner's policy and upheld the exclusion from coverage and made no reference to *Holter. New Hampshire Insurance Co. v. Abellera*, 6 Wash.App. 650, 495 P.2d 668 (1972).

Both sides cite cases and authorities for the proposition that "care, custody or control" exclusion is or is not ambiguous. As Judge Molloy noted in *Cindrich v. Fireman's Fund Insurance Co., supra,*

> There are no words, with the possible exception of mathematical terms, which are not ambiguous when applied to particular fact situations. The word "red" becomes ambiguous when applied to some shades.

6 Ariz.App. at 372, 432 P.2d at 920. However, Michelle and Diana contend that the statement by our Supreme Court in *Federal Insurance Co. v. P.A.T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976), to the effect that a conflict in cases as to the meaning of an insurance contract establishes its ambiguity controls here. The problem with the statement is that after stating it, the court proceeded to analyze the insurance contract and reached a conclusion as to its meaning. The statement is therefore dicta. In addition, as in this case the policy terms are different from those terms cited in the cases.

In conclusion, it is our opinion that Agreement 36 of Policy No. 689NA4386 excluded Michelle and Diana from coverage. Therefore, the trial court erred in granting summary judgment to the plaintiffs-appellees. The summary judgment is reversed and this matter is remanded to the trial court with instructions that judgment be entered for the appellant.

HAIRE, P.J., concurs.

MEYERSON, Judge, dissenting:

The majority opinion holds that the insurance policy does not provide coverage for bodily injuries to children attending the Young Years Child Care Center. Reading the policy as a whole, *Federal Insurance Co. v. P.A.T. Homes, Inc.*, 113 Ariz. 136, 139, 547 P.2d 1050, 1053 (1976) and giving consideration to the intent of the parties, *Harbor Insurance Co. v. United Services Auto. Association*, 114 Ariz. 58, 61, 559 P.2d 178, 181 (Ct.App.1976), I cannot accept the majority's conclusion that this comprehensive general liability insurance policy for a day care center can be construed to exclude coverage for bodily injury to children attending the facility and injured by the facility's employees. The majority's extended effort to find that no ambiguity exists belies their conclusion.

It is by now hornbook law that an exclusionary provision in an insurance contract is to be construed more strongly against the insurer and in favor of the insured. *Mountain States Tel. & Tel. Co. v. Gran-*

*ite State Ins. Corp.*, 134 Ariz. 582 at 583, 658 P.2d 235 at 236 (Ariz.Ct.App.1982). This is even more so in the case of an ambiguous provision. I agree with the many other courts which have concluded that the terms "care, custody and control" are ambiguous. "[T]he construction of the phrase 'care, custody and control,' is, to a large extent, dependent upon circumstances .... " *Employers Mutual Liability Insurance Co. v. Puryear Wood Products Co.*, 247 Ark. 673, 679, 447 S.W.2d 139, 143 (1969). Division Two of this court has stated that "it is useless to attempt a definition of the word 'control' that would be applicable to all cases involving the same policy phrase since the very nature of the word itself will require ad hoc determinations." *General Insurance Co. of America v. American Employers' Insurance Co.*, 11 Ariz.App. 38, 41, 461 P.2d 517, 520 (1969).

At least two courts which have addressed this precise issue have differed with the conclusion offered by the majority. *Lindell v. Ruthford*, 183 Mont. 135, 598 P.2d 616 (1979); *Holter v. National Union Fire Insurance Co.*, 1 Wash.App. 46, 459 P.2d 61 (1969).

> The exclusion is not applicable when the care, custody, and control is exercised by an employee of the insured and the insured is liable under the doctrine of respondeat superior, but the employee is not within the definition of an insured under the policy.

12 Couch on Insurance Second § 44A:13 at 18 (rev. ed. 1981). The foregoing language squarely contradicts the majority opinion.

Finally, I note that there is an additional exclusion in the policy for injuries to employees of the insured arising out of and in the scope of employment. The result of the majority opinion is to construe the insurance contract to provide virtually no coverage for any bodily injury whatsoever. It is difficult to conceive that the insured paid a premium for bodily injury coverage with the result that there would be no coverage for injuries to employees and any child attending the day care center. I disagree with the conclusion that this was the intent of the parties or the intent of the Arizona Department of Economic Security which was the certificate holder and apparently placed children in this facility.

I respectfully dissent.