685 P.2d 729

**Michelle GILBREATH, a minor, Through her natural mother and next friend, Diana HASSL, formerly Diana Vayda; Diana Hassl, Plaintiffs-Appellees,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a corporation, Defendant-Appellant.**

**No. 17021–PR.**

Supreme Court of Arizona,
En Banc.

May 29, 1984.

Tucker & Shoush by Kenneth L. Tucker and Jon C. Dake, Phoenix, for plaintiffs-appellees.

Jones, Skelton & Hochuli by William R. Jones, Jr., Don C. Stevens, II, Edward G. Hochuli, Phoenix, for defendant-appellant.

FELDMAN, Justice.

Michelle Gilbreath and her mother, Diana Hassl (Plaintiffs), petition this court for review. The court of appeals determined that the insurance policy issued by St. Paul Fire & Marine Insurance Company (St. Paul), defendant below, to Paul and Helen Overdorff, d/b/a Young Years Child Care, provided no coverage for injuries sustained by either plaintiff. *Gilbreath v. St. Paul Fire & Marine Ins. Co.*, 141 Ariz. 113, 685 P.2d 750 (App.1984). We have jurisdiction pursuant to Ariz. Const., art. 6, § 5(3) and Ariz.R. of Civ.App.P. 23, 17A A.R.S.

## FACTS

A detailed version of the facts, including the relevant terms of the insurance policy, are set out in the opinion of the court of appeals. We provide a brief summary. On September 1, 1976 St. Paul issued a package of insurance to the Overdorffs, including "comprehensive liability coverage." The written binder which preceded the policy had provided for $300,000 liability limits for bodily injury but specifically excluded general liability coverage for "children in their [the insureds'] care, custody and control." The binder, of course, was temporary insurance and expired when the actual policy was issued. *See Statewide Insurance Co. v. Dewar*, Ariz. (1984) [No. 16680, filed 5/29/84.] The same exclusion was embodied in endorsement number 2 to the policy; it states "[i]t is understood and agreed that no coverage is provided for bodily injury to persons who are in [the] care, custody or control of the Insured." Both the binder and endorsement provisions were specially typed and prominently displayed in the respective documents. They appear to be part of the negotiated transaction between insured and insurer. They are followed by the fine print of some 30 pages of the various insuring agreements which comprise the standarized portion of the remainder of the policy.

In December 1976, while attending Young Years Child Care, Michelle Gilbreath was sexually assaulted by Pedro Giron, an employee of the Overdorffs. Ms. Hassl, individually and as representative for Michelle, brought suit against the Overdorffs and Giron. The Overdorffs called on St. Paul to defend. St. Paul refused based on endorsement number 2. The Overdorffs then stipulated to a judgment in favor of plaintiffs. *See Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969). Plain-

tiffs then brought a declaratory action against St. Paul seeking a declaration of coverage under the policy. Both parties moved for summary judgment. The trial court entered summary judgment in favor of plaintiffs. St. Paul appealed. By majority opinion the court of appeals reversed and instructed the trial court to enter summary judgment in favor of St. Paul. Plaintiffs then petitioned this court for review. We accepted jurisdiction of this case as one of a series dealing with interpretation of insurance contracts.

## AMBIGUITY

Plaintiffs assert that the relevant policy exclusion for children in the care of the "insured" is ambiguous. It cites two sections of the policy which create the ambiguity. The argument concerns the definition of an insured in the body of the policy. The definition does not include employees of the named insured (the Overdorffs) with respect to general liability coverage. On the other hand, employees are insureds with respect to automobile coverage. Plaintiffs argue, therefore, that if St. Paul meant to exclude the Overdorffs' vicarious liability for the acts of their employees with respect to the general liability coverage it could have done so in the same manner that it included employees as insureds under the automobile coverage.[1]

Plaintiff contends, in other words, that the typewritten exclusion for children in the care of the "insured" is ambiguous when compared to the standardized provisions concerning insureds and their employees. Plaintiffs argue that the exclusion should therefore be interpreted as effective only to exclude coverage for the Overdorffs' direct liability for their own negligence, and does not clearly exclude coverage for the Overdorffs' vicarious liability for acts of employees which injure children in the care of employees, such as Giron. Support for this argument is based on *Holter v. National Union Fire Ins. Co.*, 1 Wash.App. 46, 459 P.2d 61 (1969), which construed almost identical provisions.

The majority of the court of appeals concluded that *Holter* was inconsistent with other Washington cases. The Washington Supreme Court, however, has subsequently found the reasoning of *Holter* persuasive. That court has construed policy definitions of insured almost identical to the definitions in the policy at issue in the case at bench and has held that the "care, custody and control" exclusion was not applicable where the property damaged was in the care, custody and control of an employee, as distinguished from in the direct care, custody and control of the insured. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wash.2d 65, 72, 659 P.2d 509, 513 (1983).

Such an interpretation would persuade us more if, as in *Holter* and *Schroeder*, the only document before us were the standard, printed definitions and exclusions of the various insuring agreements. We agree, however, with the majority opinion in the court of appeals that "the question is whether the policy, agreement and endorsements are clear when read together." 141 Ariz. at 117, 685 P.2d at 754. Of particular importance in answering this question is the typewritten provision added to, and prominent in, both the binder and policy endorsement number 2. So far as the record shows this special provision provides the only insight into the intent of the parties and the insured's reasonable expectations of coverage. *Darner Motor Sales v.*

1. The second source of ambiguity asserted concerns the terms "care, custody and control." It is argued that this phrase, when combined with the definition of "insured" in the policy, reinforces the ambiguity that must be resolved in favor of the insured. Couch is cited for the proposition that

> The exclusion is not applicable where the care, custody, and control is exercised by an employee of the insured and the insured is liable under the doctrine of respondeat supe-

rior, but the employee is not within the definition of an insured under the policy.

12 Couch Insurance 2d (rev. ed.) § 44A:13 at 18 (1981). Couch cites no authority for this assertion although the case of *Phil Schroeder Inc. v. Royal Globe Ins. Co.*, 99 Wash.2d 65, 659 P.2d 509 (1983) lends support. Couch adds that "the purpose for which the insured is exercising control is also relevant to application of the exclusion." Couch, *supra*, § 44A:13 at 18.

*Universal Underwriters, Inc.*, 140 Ariz. 383, 682 P.2d 388 (1984); *Isaak v. Massachusetts Indemnity Life Insurance Company*, 127 Ariz. 581, 623 P.2d 11 (1981). The dissent in the court of appeals states that

> It is difficult to conceive that the insured paid a premium for bodily injury coverage with the result that there would be no coverage for injuries to employees and any child attending the day care center. I disagree with the conclusion that this was the intent of the parties or the intent of the Department of Economic Security which was the certificate holder and apparently placed children in this facility.

That point is well taken. It is equally difficult to conceive that the insurer would agree to insure Overdorff's vicarious liability for "acts of employees" but not their direct liability for their own acts. While it may appear curious that the proprietors of a day care center contracted for insurance which excluded the risks most likely to occur, the words used in endorsement number 2 indicate that is exactly what was done here. Such a result becomes much less curious when one considers that an insurer could be quite reluctant to indemnify the proprietor of a child care center against the frightening panorama of liability inherent in assuming the duty of care and supervision over a large number of preschool children. Considering these factors, and the plain wording of the special endorsement, it appears that the only risks the parties expressed on agreement to insure against were those common to general business premises liability policies. *Gilbreath v. St. Paul Fire & Marine Ins. Co.*, 141 Ariz. at 113, 117, 685 P.2d at 750, 754.[2] They specifically excluded those extraordinary risks peculiar to the child care business in which the insured was engaged.

 Viewed from this vantage it is difficult to conceive that the express provisions of the binder and endorsement number 2 mean that St. Paul undertook the risk of insuring against harm to children under the care of the Overdorffs' employees in child care business. It seems clear from this record that by the negotiated terms of the policy, the parties expressed an intent not to provide insurance coverage to protect the insured from exposure to such risks. The non-standard terms explicitly agreed to in endorsement number 2 indicate that the dominant purpose of the transaction had nothing to do with the protection of the children under the care of the Overdorffs. The expressed purpose of the transaction is not undercut by the standardized provisions elsewhere in the policy. *Cf. Darner Motor Sales*, 140 Ariz. at 393, 682 P.2d at 398 (quoting *Restatement (Second) of Contracts* § 211, comment (f)).

## PUBLIC POLICY

Plaintiffs argue that a certificate issued by St. Paul to the state Department of Economic Services had some relation to provisions for basic coverage. The legislature can act to have comprehensive coverage included in every policy by operation of law and has done so in the field of automobile liability insurance. *Jenkins v. Mayflower Ins. Ex.*, 93 Ariz. 287, 380 P.2d 145 (1963). A "Certificate of Insurance" was issued to DES. At the top of the certificate the following statement is clearly printed:

> This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies listed below.

The one-page certificate, issued on 8–23–77, includes the following annotation: "(It is understood and agreed that no coverage is provided for Bodily Injury to persons who are in care, custody, or control of the insured.)" A copy of the binder, sent to DES on 1–13–77, included the policy number and liability limits of the various insuring

---

2. This conclusion is rational in view of the form of the policy which contains fire and extended coverage for the buildings, general premise liability, property coverage and automobile coverage, all for a yearly premium of $678.00.

agreements. The space for "Discussion of coverage" contains the following:

> NOTE: It is understood and agreed that no coverage is provided for bodily injury to persons who are in the care, custody or control of the Insured.

 It is clear from this caveat that the certificate issued to DES does not contravene the policy endorsement. Nor does such a bargain contravene public policy in Arizona. Title 9, Chapter 5 of the A.C.R.R. adopted pursuant to A.R.S. § 36–883(A) sets standards for licensure of day care centers. There is no provision concerning insurance. A.C.R.R. R9–5–311(A) states, in fact, that "the licensee is ultimately responsible for the upkeep and maintenance of the center's property and for overseeing the center's operation in accordance with these regulations." The minimum standards embodied in the regulations are expressly not intended to "supplant the need for parents to make a careful evaluation, wise selection, and continued appraisal of the center caring for their child or children." A.C.R.R. R9–5–111. The regulations promulgated by DES are also silent regarding insurance for child day care services, A.C.R.R. R6–5–5101 *et seq.* Nor is insurance mentioned in the DES regulations concerning the certification and supervision of day care facilities. A.C.R.R. R6–5–5201 *et seq.* In contrast, DES licensing standards for group foster homes require liability insurance. A.C.R.R. R6–5–5903(I)(21). Plaintiffs have not drawn our attention to any statute or regulation which requires insurance for day care. We find nothing analogous to the Financial Responsibility Act construed in *Jenkins, supra.* In the absence of any enacted public policy, the Overdorffs were free to contract for insurance that did not protect against the risk in question and St. Paul was free to exclude coverage for such risks.

 There is no contention that the expressed intent of the parties differed from the plain words of endorsement number 2

or that the exclusion destroyed the expressed or implicit purpose of the transaction.[3] *Darner Motor Sales, supra; Issak, supra.* The Overdorffs elected to bear the risk that a child would be injured through their negligence or that of their employees. There is no contention that they made another bargain or agreed to this because of overreaching by the insurer. There is no contention that the governing provision is unconscionable. *Darner Motor Sales, supra.* (Cameron, J. concurring). Our belief in the need for such coverage for the protection of third parties who might reasonably have expected an operator of a day care center to purchase insurance coverage, cannot lead us to write such insurance where neither the parties nor the legislature has acted for their protection. One purpose of the rule which we adopted in *Darner* was to free courts from the necessity of writing a contract for the parties by finding "ambiguity" where none exists. We believe that the phrase "no coverage is provided for bodily injury to persons who are in [the] care, custody or control of the insured" clearly and unambiguously means that the insureds are not covered for any liability, direct or vicarious, for injury to children in their child care center.

### THE MOTHER'S CLAIM

 Plaintiffs claim that even if the policy does not cover the injury to the child, it does cover the injury to the mother for emotional distress resulting from learning that her child had been sexually molested. The mother, of course, was not within the insured's "care, custody and control," so the exclusion is inapplicable. No applicable exclusion is advanced by St. Paul. Since the mother did not witness the injury to the child, defendant argues, however, that no valid claim exists to be covered. Ordinarily, this fact would mean that there would be no tort claim cognizable under the rule of *Keck v. Jackson,* 122 Ariz. 114, 593 P.2d 668 (1979) or even under *Restatement (Sec-*

---

3. It is not contended for example, that Overdorffs requested liability coverage for a child care center and was provided with a policy which, unknown to all, contained a boilerplate provision excluding coverage for injury to children.

*ond) of Torts* § 46. However, this emotional distress claim has gone to judgment; the issue here is not whether judgment should have been rendered but whether there is insurance coverage for the judgment that was rendered. This policy, like most, covers all claims within the insuring agreement, even if "groundless."[4] The court of appeals failed to address this problem. St. Paul suggests no answer except that the judgment in the tort action may be collaterally attacked in this subsequent declaratory judgment action which concerns the coverage dispute. St. Paul cites *Wells v. Valley National Bank of Arizona,* 109 Ariz. 345, 509 P.2d 615 (1973) for this proposition. *Wells* holds that a judgment may be collaterally attacked when, because of improper service of process, the court rendering the judgment had no jurisdiction. The principle is not applicable here. The court which rendered judgment had jurisdiction over the parties. No claim of lack of jurisdiction was made. In essence, St. Paul would have us declare the judgment void and permit collateral attack because it was based upon an erroneous legal premise. This we cannot do. Since the judgment was rendered with jurisdiction and is regular on its face, it cannot be collaterally attacked. *Walker v. Davies,* 113 Ariz. 233, 550 P.2d 230 (1976); *State Farm Mut. Auto Ins. Co. v. Paynter,* 122 Ariz. 198, 593 P.2d 948 (App.1979); *see,* however, *F. Price v. Sunmaster,* 27 Ariz.App. 771, 558 P.2d 966 (1976) (permitting direct attack). Coverage for the judgment is not excluded under any provision of the policy.

The opinion of the court of appeals is approved in part and vacated in part. The judgment in favor of Ms. Hassl is affirmed; the judgment in favor of Ms. Gilbreath is reversed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

---

**4.** Insuring Agreement 36 states that "[t]he Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... Bodily Injury, ... to which this Insuring Agreement applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury ..., even if any of the allegations of the suit are groundless ..."