712 P.2d 436

**UNITED STATES FIRE INSURANCE,**
Plaintiff/Appellant,

v.

**Frank GENTILE and Cochise College,**
Defendants/Appellees.

No. 2 CA–CIV 5182.

Court of Appeals of Arizona,
Division 2, Department A.

April 1, 1985.

Chandler, Tullar, Udall & Redhair by D.B. Udall, Tucson, for plaintiff/appellant.

Corey & Farrell, P.C. by Barry M. Corey, Tucson, for defendant/appellee Gentile.

Bury, Moeller & Humphrey by David C. Bury, Tucson, for defendant/appellee Cochise College.

OPINION

FERNANDEZ, Judge.

This is an appeal from a declaratory judgment entered in favor of Cochise College and the administrator of the estate of one of the passengers who was killed in an airplane crash on December 3, 1981. At issue is the amount of coverage for bodily injury to passengers under an insurance policy issued by United States Fire Insurance Co., specifically, whether the coverage is $100,000 or $1 million. The trial court found the coverage to be $1 million. We affirm.

Cochise College had originally obtained a policy to cover its aviation instruction program in 1971 from Ranger Insurance Company through the Aviation Office of America, a managing general agency, in the amount of $1 million third-party liability with passenger liability limited to $100,000 per seat and $300,000 per occurrence. The policy was renewed annually until 1975 when the state provided coverage for one year. In 1976 another Ranger policy was obtained and from 1977 through June 1983, annual renewal coverage was provided through U.S. Fire after a change in ownership of the Aviation Office of America. The same aviation underwriter, Mike Harzmann, handled the policy from 1976 through 1983, and it was he who wrote the typed-in provisions of the policy.

Cochise College's insurance agent, Jay Jones, was responsible for obtaining insurance for the college and for recommending appropriate coverage amounts. He was neither an agent of U.S. Fire nor of the Aviation Office of America but merely submitted information to the agency for quotes and obtained the approval of the college. He handled the paperwork when airplanes were added to or deleted from the policy, obtained information on pilots and the like. The college relied on him to recommend appropriate coverage amounts.

The printed portion of the policy for 1981–1982 under "Insuring Agreements" states as follows:

"Coverage D—Single Limit Bodily Injury (including or excluding passengers) and Property Damage Liability. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, excluding passengers as defined herein, unless the Declarations describe Coverage D as "Including Passengers", and for damages because of injury to or destruction of property, including the loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft."

In order to better understand the position of the parties we have included copies of the applicable portions of the following three documents that are part of the policy herein as follows: 1) Declaration Page, 2) Endorsement 1,[1] and 3) Endorsement 4.[2] The declaration page contains the following information under the heading "Coverages":

"D. Single Limit Bodily Injury and Property Damage Liability *IN*cluding Passengers *SEE END 1 & 4."

The following appears under the heading "Limits of Liability":

"1,000,000 each occurrence"

Endorsement 1 is the crucial portion of the policy here because of the significant placement of the typed-in phrase *"WITH RESPECT TO N–6015M ONLY:"*. As can be seen, paragraph 9 on Endorsement 1 limits passenger liability under Coverage D to $100,000 per person and $500,000 per occurrence. The airplane involved in the subject crash was a Cessna 210, registration number N93956. Endorsement 4 is in the form of a declaration sheet and shows the following information:

"All Aircraft Insured Under This Policy N–6015M"

"Coverages

D. Single Limit Bodily Injury and Property Damage Liability *EX*cluding Passengers"

"Limits of Liability

$1,000,000 each occurrence."

The parties are agreed that the initial policy provided passenger liability coverage in the amount of $100,000. The only specific discussion on policy limits that either Harzmann or Jones remembered occurred some months after the accident in December 1981. The declaration sheet for the policy years 1979–1980, 1980–1981 and 1982–1983 reads the same as that quoted above under "Coverages" and "Limits of Liability". Endorsement 1 for 1979–1980 and 1980–1981 is the same as the one in question here. No Endorsement 1 for 1982–1983 is contained in the record.

The declaration sheet for the 1978–1979 policy year is the same with regard to Coverage D except that it refers only to Endorsement 1. The only Endorsement 1 for that year contained in the record was one issued in March or April 1979 after coverage was obtained for a Stinson aircraft, registration number N–6015M, that was purchased by the college to be used by the mechanics training classes. It was not intended to be flown. This Endorsement 1 is the first to include the disputed typed-in phrase. It also shows $300,000 per occurrence coverage for passenger liability in paragraph 9. Endorsement 4, as it read at the time of the accident, was also issued in March 1979 after the Stinson was acquired. It was also issued for the years 1979–1980, 1980–1981 and 1981–1982.

Harzmann testified general company policy was to write no more than $100,000 passenger liability on instructional and rental type operations. Jones testified Harzmann had never told him he could not write more than $100,000 per seat passenger coverage. Jones also testified the 1981 accident was the first at the college involving passengers.

1. The circles on Endorsement 1 were added by an attorney after litigation commenced.

2. See Attachments 1, 2 and 3.

*Reasonable Expectations of the Parties*

■ We turn now to a discussion of the applicable case law. That discussion must, of course, begin with *Darner Motor Sales v. Universal Underwriters*, 140 Ariz. 383, 682 P.2d 388 (1984). In that case our supreme court held that, in order to determine both the extent of integration of and to interpret a negotiated agreement, the court can look at evidence on surrounding circumstances, prior understandings, subsequent conduct and the like. In *Darner*, unlike here, the terms in issue were part of the printed portions of the policy about which the insurance agent had made contrary representations. In determining that the reasonable expectations of the insured induced by the agent's promises were entitled to be honored, the court applied established principles of contract law to adhesion contracts.

The problem with applying *Darner* to this case is that in *Darner* the loss that occurred was one about which the insured had made a specific inquiry and the agent had made specific representations. There were no specific inquiries or representations in this case, merely a continuing course of conduct in annually renewing the policy after annual increases in the premiums.

The facts here are somewhat similar to those in *Gilbreath v. St. Paul Fire & Marine Ins.*, 141 Ariz. 92, 685 P.2d 729 (1984) and *American National Fire Ins. Co. v. Esquire Labs of Arizona*, 143 Ariz. 512, 694 P.2d 800 (1984). In both cases a specific exclusion was involved which was determined to be evidence of the intent of the parties and the insured's reasonable expectations of coverage. In *Gilbreath* an exclusion of general liability coverage for children in the care, custody and control of the insureds was held to preclude coverage for a sexual assault on a child by an employee at the insureds' day care center. The court found the endorsement to be the only expression of the insureds' intent and an indication that the dominant purpose of the policy had nothing to do with the protection of the children in the insureds' care.

Although a specific exclusion is involved here, the insurance company's placement of the phrase "WITH RESPECT TO N–6015M ONLY" on Endorsement 1, leaves no clear-cut statement of the parties' intent with regard to passenger liability coverage.

In *American National* the endorsement excluded coverage for operation of a hair transplant laboratory. The insureds operated a hair implant laboratory. Evidence had been offered that all those involved in the negotiations understood that coverage could not be provided for the business in which the insureds were engaged. Although this court found the policy to be unambiguous, we noted that the surrounding circumstances indicated the intent of the insureds and held evidence of such should have been admitted.

In this case, evidence of surrounding circumstances was admitted. The college's insurance agent testified he understood passenger liability coverage to be $1 million at the time the policy was renewed in June 1981 and at the time of the accident. Although it was agreed the insured had originally requested $100,000 coverage in 1971, no one specifically remembered whether or not anyone had ever requested increased passenger coverage in later years. Jones testified he thought the limits were increased around 1978. Harzmann, the company's agent, testified he intended passenger liability to be limited to $100,000, but he never discussed liability limits with the college's agent until some months after the accident.

The fact that no one specifically remembered a request for an increase in passenger liability coverage is not a basis for concluding that no request was made. Jones testified it is not unusual for such increases to be handled by telephone. He also testified his office had 3,000–4,000 accounts during the period in question so he could not remember everything that occurred with all of them. Appellees' argument in this regard is greatly bolstered by the fact that the per occurrence coverage was increased to $500,000 in 1979 although there is no paperwork in the insurance

company file indicating a request for the increase was made. These were all matters that were considered by the trier of fact.

No findings of fact and conclusions of law were requested or made in the trial court pursuant to Rule 52(a), Rules of Civil Procedure, 16 A.R.S. Thus, we must view the evidence and reasonable inferences therefrom in the light most favorable to appellees. *Jerger v. Rubin,* 106 Ariz. 114, 471 P.2d 726 (1970). The evidence here sustains a finding that the reasonable expectations of the insured were that the policy provided $1 million passenger liability coverage.

### Ambiguity

■ The determination of the integration of the agreement is made more difficult by the fact that a strong argument has been made that the policy is ambiguous. Endorsement 1, on which the typed-in phrase "WITH RESPECT TO N–6015M ONLY:" appears just under the printed phrase "IN CONSIDERATION OF THE PREMIUM CHARGED IT IS AGREED THAT THE FOLLOWING PARAGRAPH(S) AS INDICATED BY (X) SHALL BE APPLICABLE TO THIS POLICY:", contains the following in paragraph 9 which has been checked:

> "Under Coverage D it is agreed that the Company's limit of liability as respects bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by passengers, shall be subject to a maximum of *$100,000* [typed-in] each person, *$500,000* [typed-in] each occurrence."

Endorsement 4, which also applies to N–6015M, states that Coverage D excludes passenger liability. Thus, the policy as written is ambiguous with regard to passenger coverage on N–6015M. The problem with that, of course, is that N–6015M is not the plane that crashed. Appellant contends that paragraph 9 of Endorsement 1 was intended to apply to the other airplanes listed in the policy (there were 12 others at the time of the accident) and that the disputed typed-in phrase was intended

to apply to paragraph 1 only. As appellees have pointed out, however, no ordinary layman reading the policy would apply that phrase to paragraph 1 alone. *Sparks v. Republic Nat. Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127, cert. denied, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). Indeed, Jones, the college's insurance agent, a man with 26 years' experience in the insurance business, read the policy and determined all paragraphs of Endorsement 1 applied to N–6015M only. We must conclude that when the policy, agreement and endorsements are read together pursuant to *Gilbreath v. St. Paul Fire & Marine Ins.,* supra, either Endorsement 1 applies only to N–6015M or the policy is ambiguous with regard to passenger coverage on N–6015M, not the airplane in issue here. In that case, the declaration page governs passenger liability coverage for N93956, and coverage is in the amount of $1 million. The law is still that if an ambiguity exists, such ambiguity must be construed against the insurance company. *Sparks v. Republic National Life Ins. Co.,* supra.

### Reformation

■ Appellant contends that the policy should be reformed since a renewal policy should contain the same coverage requested initially unless a change has been ordered by the insured or the agent. *Lumbermen's Ins. Co. v. Heiner,* 74 Ariz. 152, 245 P.2d 415 (1952). Although appellant did not seek reformation in the trial court, if the pleadings and evidence are such as would warrant reformation the court can enforce the policy as though it were reformed, *A.I.D. Insurance Services v. Riley,* 25 Ariz.App. 132, 541 P.2d 595 (1975). In order to obtain reformation, however, appellant must show by clear and convincing evidence either that a mistake was mutual or that a unilateral mistake by one party is accompanied by fraud or inequitable conduct by the other, *Jeffries v. First Federal Sav. & Loan Ass'n of Phoenix,* 15 Ariz.App. 507, 489 P.2d 1209 (1971). Mutual mistake cannot be shown since the evidence shows the parties intended two different amounts of coverage. Nor is

there a claim of fraud or inequitable conduct on the part of Cochise College. "Inequitable conduct which would justify reformation when there is unilateral mistake takes the form of knowledge on the part of one party of the other's mistake." *Isaak v. Massachusetts Indemnity Life Ins. Co.*, 127 Ariz. 581, 584, 623 P.2d 11, 14 (1981). Harzmann conceded he had no discussion with Jones about liability limits until after the accident occurred. Jones was never told the company would not write more than $100,000 passenger coverage on instructional operations such as the college had. There is no merit to the contention the policy should be reformed.

### Admission of Evidence

■ Finally, appellant complains of the trial court's refusal to admit two items of evidence. The first was the testimony of Lee Oppenheim, the division chairman of aviation technology at Cochise College. He testified that he had not participated in obtaining the initial policy in 1971 nor in the amount of coverage that was felt to be appropriate. He stated his only actions with regard to the policy were to submit a list of the aircraft to be covered each year and to check the policy's aircraft list to determine the numbers were listed correctly. "A trial judge has considerable discretion in determining the relevancy and admissibility of evidence." *Wait v. City of Scottsdale*, 127 Ariz. 107, 109, 618 P.2d 601, 603 (1980). In light of Oppenheim's testimony on his tenuous connection to the policy, the trial court correctly refused the testimony as to his belief on the amount of coverage carried by the college.

■ The second item consisted of two letters written to the college, one by an employee in Jones' office and one by Jones, in November 1982, nearly a year after the accident. The letters refer to efforts to obtain $1 million passenger liability coverage. Appellant contends they are clear evidence of the insured's request for only $100,000 coverage prior to the accident and the reasonable expectations of the insured at the time of the accident. Jones testified he first learned of the company's position that there was only $100,000 passenger coverage on July 8, 1982, some seven months after the accident and only a few days after the college had again renewed the policy. The letters are just as likely, then, to be evidence of the insured's attempt to fulfill its reasonable expectations by making certain its coverage was $1 million in light of the company's position that the coverage was only $100,000. The trial court refused to admit the letters and sustained a relevancy objection to their offer. There was no abuse of discretion in his ruling since the letters dealt only with conduct of the college many months subsequent to the accident in question here. *Wait v. City of Scottsdale*, supra.

Since we find no merit in appellant's contentions, judgment for appellees is affirmed. Appellees are awarded attorneys' fees on appeal pursuant to Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S.

BIRDSALL, P.J., and HOWARD, J., concur.

Attachment 1

# UNITED STATES
## FIRE INSURANCE COMPANY

UNITED STATES FIRE INSURANCE COMPANY

A Capital Stock Company
Incorporated in New York, 1824
Administrative Offices: Morristown, New Jersey 07960

**PART TWO**

This *Declarations* page with "Policy Provisions-Part One" completes the below numbered policy.

AC G2 US 49056
RENEWAL OF NUMBER

PRODUCER CODE B2385W-0100

AIRCRAFT POLICY

| Item | DECLARATIONS | POLICY NUMBER AC G2 US 51042 | |
|---|---|---|---|
| 1. | Name of Insured ► ADDRESS: | COCHISE COLLEGE SEE ENDORSEMENT #3 DOUGLAS, ARIZONA 85607 | ☐ Individual(s) ☒ Partnership ☐ Corporation JR. COLLEGE ☒ DISTRICT |

| 2. | POLICY PERIOD 1201 AM STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN From JULY 1, 1981 To JULY 1, 1982 |
|---|---|
| 3 | LOCATION OF AIRCRAFT: The aircraft will be principally TIED OUT (hangared/tied out) at (airport; city; county; state) COCHISE COLLEGE AIRPORT, DOUGLAS, ARIZONA |

4. COVERAGES: The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all of the terms of this Policy having reference thereto. When two or more aircraft are insured hereunder, the terms of this policy shall apply separately to each.

| COVERAGES | LIMITS OF LIABILITY | | PREMIUMS |
|---|---|---|---|
| A. Bodily Injury Liability, Excluding Passengers | $ | each person | |
| | $ | each occurrence | $ |
| B. Passenger Bodily Injury Liability | $ | each person | $ |
| C. Property Damage Liability | $ | each occurrence | $ |
| D. Single Limit Bodily Injury and Property Damage Liability INcluding Passengers *SEE END1&A | $ 1,000,000.00 | each occurrence | $ |
| E. Medical Payments including Crew | $ | each person | $ |

**596**

Attachment 2

## SPECIAL PROVISIONS ENDORSEMENT

This endorsement, effective   **JULY 1, 1981**    forms a part of policy No    **AC C2 US 51042**
(12.01 A M. standard time)

Issued to:    **COCHISE COLLEGE  (SEE END #3)**

By.    **UNITED STATES FIRE INSURANCE COMPANY**

IN CONSIDERATION OF THE PREMIUM CHARGED It IS AGREED THAT THE FOLLOWING PARAGRAPH(S) AS INDICATED BY (X) SHALL BE APPLICABLE TO THIS POLICY:

**WITH RESPECT TO N-6015M ONLY:**

1. [X] The first paragraph of Condition 10 reading—
   "In the event of total loss, the Company will pay to the insured the amount of insurance specified in the declarations."
   Is hereby deleted in its entirety and the following substituted therefor:
   The limit of the Company's liability for loss of or damage to the aircraft shall not exceed the actual cash value thereof at the time any loss or damage occurs nor what it would then cost to repair or replace the aircraft or parts thereof with other of like kind and quality, and shall in no event exceed the limits of liability as stated in the declarations.

2. [X] It is hereby agreed that in the event the insured aircraft is not regularly hangared at its home airport, loss, if any, hereunder due to windstorm, cyclone, tornado, hail sleet or snow shall be subject to a deductible of 10% of the amount of insurance applicable to the aircraft subject however to a maximum of $ _____**250.00**_____ each loss.

3. [ ] It is agreed that in the event the insured aircraft is not regularly hangared at its home airport the limit of the Company's liability, in the event of hail, shall be as follows:
   (a) Where the airworthiness is affected, repairs will be made as set forth in the Policy subject to the deductible set forth in paragraph 2 above.
   (b) Where the airworthiness is not affected, the liability of the company is limited to reasonable expense for restoration of appearance of the aircraft, not to exceed 10% of the insured value, which amount will be subject to a deductible of $ _____**250.00**_____

4. [X] Under Coverage F a deductible in the amount of $ _____**250.00**_____ shall apply to loss or damage caused by fire, explosion, lightning, theft, robbery or vandalism.

5. [ ] This Policy does not apply to any occurrence or to any loss or damage involving the intentional use, except emergency, of any location other than an airport regularly used for the normal landing and taking off of the type aircraft insured under this Policy.

6. [X] This Policy does not apply to any occurrence or to any loss or damage occurring while the aircraft is being operated in flight by a Student Pilot unless each flight is under the direc supervision and specifically approved by a properly qualified Flight Instructor certificated by the Federal Aviation Administration.
   This exclusion is not applicable to any Student Pilot following issuance of a Private Pilot Certificate.

7. [ ] This Policy does not apply under Coverages A, B, C, D, E and G to any Insured who operates or permits the aircraft to be operated in violation of United States Federal Air Regulations applicable to aerobatic flight, instrument flight, minimum safe altitude, repairs, alterations, night flight or in violation of any regulation pertaining to pilot certificates.

8. [ ] With respect to the starting of the aircraft engine (or engines), this Policy does not apply to any occurrence or to any loss or damage caused by or resulting from such aircraft moving under its own power or the momentum generated therefrom unless the aircraft is occupied by a person at the controls who is a properly certificated Pilot or Mechanic.

9. [X] Under Coverage D it is agreed that the Company's limit of liability as respects bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by passengers, shall be subject to a maximum of $ _____**100,000.00**_____ each person, $ _____**500,000.00**_____ each occurrence.

10. [ ] Sales Demonstration shall be defined as:—Demonstration of the aircraft to prospective purchasers but excluding any operation of the aircraft by such prospective purchaser unless accompanied in the aircraft by the named insured or by a pilot in the employ of the named insured and excluding any operation for which a charge is made.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, WAIVE, ALTER OR EXTEND ANY OF THE TERMS, CONDITIONS, AGREEMENTS OR WARRANTIES OF THE POLICY, OTHER THAN AS ABOVE STATED.

AVIATION OFFICE OF AMERICA, INC.

Endorsement No. _____**1**_____

JUN 25 1981
AUTHORIZED REPRESENTATIVE

JUNE 18, 1981
DATE

--14--

FORM AOA 15006 3-70

FILE COPY

2

Attachment· 3

## DECLARATIONS AMENDATORY ENDORSEMENT

This endorsement, effective **JULY 1, 1981** forms a part of policy No. **AC G2 US 51042**

(12:01 A.M., standard time)

Issued to: **COCHISE COLLEGE (SEE END. #3)**

By: **UNITED STATES FIRE INSURANCE COMPANY.**

In consideration of **NIL** premium of $ **NIL**, it is agreed that the typewritten portion of such of the following item(s) of the Declarations as are indicated by (x) is amended to read as stated below, and applies to:

| | |
|---|---|
| ☐ | All Aircraft Insured Under This Policy |
| ☒ | N-6015M |

| Item | | | | | | |
|---|---|---|---|---|---|---|
| **1.** ☐ ☐ | Name of Insured Address | | | | | |
| **2.** ☐ | POLICY PERIOD: 12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN. | From. | | To | | |
| **3.** ☐ | LOCATION OF AIRCRAFT: The aircraft will be principally _____ (hangared/tied out) at (airport; city; county; state. | | | | | |

| 4. | COVERAGES | LIMITS OF LIABILITY | | ADDITIONAL PREMIUM | RETURN PREMIUM | ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| ☐ | A Bodily Injury Liability "Excluding Passengers | $ $ | each person each occurrence | $ | $ | $ |
| ☐ | B Passenger Bodily Injury Liability | $ | each person | $ | $ | $ |
| ☐ | C Property Damage Liability | $ | each occurrence | $ | $ | $ |
| ☒ | Single Limit Bodily Injury and D Property Damage Liability XX cluding Passengers | $ 1,000,000. | each occurrence | $ | $ | $ N/C |
| ☐ | E Medical Payments Incl. Crew | $ | each person | $ | $ | $ |
| | | LIABILITY PREMIUMS | | | | |
| ☐ | F All Risks While Not in Motion | $ Less $ | ded | $ | $ | $ |
| ☐ | G All Risks While in Motion | $ Less $ | ded | $ | $ | $ |
| ☐ | | HULL PREMIUM | | $ | $ | $ |
| ☐ | | ENDORSEMENT PREMIUM | | $ | $ | $ |
| ☐ | | TOTAL PREMIUM | | $ | $ | $ |
| ☐ | | | | | | |

| 5. | DESCRIPTION·OF AIRCRAFT | | "N/C" MEANS NO CHANGE | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | Make and Model of Aircraft | F.A.A. Number | Year of Manufacture | Pass. Cap. Ex. Crew | Type | Engine H.P. |

**6.** PURPOSE(S) OF USE: The aircraft will be used only for the purposes indicated by "X": (As defined in Declarations)
☐ (a) "Pleasure and Business". ☐ (b) "Industrial Aid" ☐ (c) "Limited Commercial" ☐ (d) "Commercial Ex Instruction or Rental" ☐ (e) "Commercial" ☐ (f) "Flying Club" ☐ (g) "Special Uses"·

**7.** ☐ PILOT CLAUSE: Only the following pilot or pilots holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight:

**10.** ☐ LOSS PAYABLE: Loss, if any under coverages F & G is payable as interest may appear to the Named Insured and

NOTHING HEREIN CONTAINED SHALL BE HELD·TO·VARY; WAIVE, ALTER OR EXTEND ANY OF THE TERMS; CONDITIONS; AGREEMENTS OR WARRANTIES OF THE POLICY, OTHER THAN AS·ABOVE STATED

AVIATION OFFICE OF AMERICA, INC.

JUN 2 6 1981

Endorsement No. 4

—15—

JUNE 18, 1981

Authorized Representative    Date

FORM AOA 15030 2 68