483 P.2d 592

Ray E. CAGLE and Forrest L. Cagle, dba Cagle Bros. Trucking Service, a co-partnership, Appellants,

v.

The HOME INSURANCE CO., Appellee.

No. 1 CA–CIV 1169.

Court of Appeals of Arizona, Division 1, Department B.

April 13, 1971.

Rehearing Denied May 14, 1971.

Review Denied June 22, 1971.

Lutich, D'Angelo & Wilson by Richard A. Wilson, Phoenix, for appellants.

Jack M. Anderson and Paul W. Holloway, Phoenix, for appellee.

EUBANK, Judge.

In this appeal a contractor's tractor and backhoe was totally destroyed while it was being transported to a construction site on a truck and trailer owned by the appellant-motor carrier. The appellant-motor carrier's insurance company settled the claim by paying the contractor the purchase price of a new tractor and backhoe, while specifically agreeing with the contractor that the settlement covered, "property damage only and does not constitute a release of any loss of services." The contractor then brought suit against the appellant for the rental value of replacement equipment and recovered a judgment. Appellant then sued the insurance carrier in the case at bar and lost when the trial court entered summary judgment in favor of the Insurance Co. The question for review is whether the insurance contract did, in fact, include coverage for the loss of services of the tractor and backhoe. We hold that it did not and affirm the summary judgment entered by the trial court.

Other aspects of the facts involved in this case have been the subject of prior decisions in the appellate courts. See our opinion Cagle v. Carr, 3 Ariz.App. 285, 413 P.2d 795 (1966), which was vacated by the Supreme Court's decision in 101 Ariz. 225, 418 P.2d 381 (1966). The facts are fully set out in these prior decisions and will not be repeated here, except where necessary to the disposition of this matter.

In the case at bar, the appellants Ray E. Cagle and Forrest L. Cagle, doing business as Cagle Brothers Trucking Service, a partnership, and hereafter referred to as the "plaintiffs", filed their complaint in the Superior Court against appellee, The Home Insurance Co., hereafter referred to as the "Insurance Co.", alleging generally in Count One that they were insured by the

the Insurance Co. through policy No. TM 401088; that a loss occurred; that they notified the Insurance Co. which refused to defend them; that following extensive litigation a judgment in the sum of $4806.40 was awarded against them in Cagle v. Carr, supra; that they made demand upon the Insurance Co. to pay the judgment but the Insurance Co. refused to do so, resulting in their damage. Count Two of the complaint alleges generally that the Insurance Co. in settling with the shipper, Carr, caused its damage in Cagle v. Carr, supra, and, in turn, constituted a breach of the insurance contract by their failure to defend. Count Three is still before the trial court and not subject to this review. The Insurance Co. answered denying all of plaintiffs' allegations relating to its breach of a duty under the insurance contract and set up as an affirmative defense the following:

"1. That prior to the filing of Cause No. 141907 referred to in paragraph III of plaintiff's complaint, defendant [Insurance Co.] paid to the claimant John Carr [contractor] the sum of $9,120.80, said sum having been agreed to as the full cash value of the Bucyrus-Erie tractor and backhoe which was completely destroyed in the accident.

2. That notwithstanding the release executed by John Carr contained a provision that it released property damage only and did not constitute a release of any loss of use, payment of the full cash value discharged all of the liability of this answering defendant under the terms and provisions of its policy contract. Said policy No. TM 401088 expressly provides in part as follows:

4. This company shall not be liable for more than the amount of invoice or if not under invoice, then at actual cash market value at the place of shipment: it is agreed however, that this Company shall not be liable for more than $25,000 in any one loss or catastrophe, casualty or disaster involving one or more pieces of equipment, and

*    *    *    *    *    *

6. This Policy Does Not Insure Loss or Damage

(e) Caused by delay or loss of market."

These pleadings set the stage wherein both parties filed motions for summary judgment based upon the express provisions of the insurance contract. The trial court, finding that there was no issue as to any material fact, granted summary judgment in the Insurance Co.'s favor and the plaintiffs appeal from that award raising five questions as follows:

"1. Are damages awarded against Appellants for rental of replacement equipment excluded under Appellee's contract of insurance?

2. Was Appellee, under its contract of insurance, required to provide Appellants with attorneys and a defense against Carr even though Appellee claims the loss sued for is excluded under its policy?

3. If Appellee was obligated to defend Appellants under the contract of insurance, are Appellants now entitled to recover from Appellee the cost of said defense, including attorneys' fees and court costs?

4. When a count in a complaint states a cause of action, may a trial court grant summary judgment or a motion to dismiss to the Defendant upon its bare motion unsupported by controverting affidavit of points of law?

5. Did the trial court commit error in not granting Appellants' Motion for Partial Summary Judgment or, in the alternative, in granting Appellee's Motion for Summary Judgment?"

## THE CONTRACT OF INSURANCE

The first three questions on appeal are resolved by reference to the contract of insurance, consequently they will be dealt with together.

Plaintiffs' position regarding the contract of insurance is, " *  *  * that, under the

policy and general laws of the State of Arizona, appellee [Insurance Co.] is liable on appellants' [plaintiffs] legal liability as a common carrier or a contract carrier for loss or damage caused by the perils insured against under the contract of insurance." Plaintiffs then specifically refer to three provisions of the contract which form the basis for their position: Item numbered "1" which reads:

"1. Loss, if any, Payable to Assured or Order."

A portion of Item numbered "2", which is a provision in the "Arizona Rider" defined hereafter, which reads:

"2. On the Assured's legal liability as common carrier or Assured's liability as a contract carrier for loss or damage caused directly by perils insured against hereunder, * * *."

and a portion of Item "5" entitled, "THIS POLICY INSURES", which reads:

"The legal liability of the Assured as a common or contract carrier for loss or damage directly caused by: * * *."

It is plaintiffs' contention that the use of the term "legal liability" in the contract extends the Insurance Co.'s coverage to include not only the $9,120.80 settlement with the shipper Carr for the destroyed tractor and backhoe, but also the $4806.40 judgment, for the rental of a replacement backhoe for the period May 12, 1962 through August 7, 1962, rendered against the plaintiffs in Cagle v. Carr, supra.

We have carefully scrutinized the contract of insurance and we cannot agree with the plaintiffs' construction of the contract. The Supreme Court has concisely set out the rules of construction applicable to an insurance contract as follows:

"In the absence of a statutory provision which will be read into each policy issued thereunder and cannot be contracted away by either party, United States Fidelity and Guaranty Company v. Hirsch, 94 Ariz. 331, 385 P.2d 211 (1963), the principles to be applied in construing an insurance policy have been stated by this Court, in a series of decisions and may be summarized as follows: The cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control. An insurance policy is a contract, and in an action based thereon the terms of the policy must govern. * * * [W]here the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there. [Citation of cases.]" D. M.A.F.B. Federal Credit Union v. Employers Mut. Liability Ins. Co. of Wis., 96 Ariz. 399, 396 P.2d 20.

See also Dairyland Mutual Ins. Co. v. Andersen, 102 Ariz. 515, 517, 433 P.2d 963, 965 (1967).

The Insurance Co.'s policy No. TM 401088, we believe, sets forth a clear intention of the parties to insure the cargo or personal property carried in plaintiffs' trucks. On the first page of the policy we find the Insurance Co.'s obligation set out as follows:

"The Home Insurance Company * * * BY THIS POLICY OF INSURANCE * * * Does Insure [Plaintiffs] * *. To an amount not exceeding TWENTY-FIVE THOUSAND AND NO/100 * * Dollars against loss resulting from the liability of the assured [plaintiffs] to others for loss or damage to lawful goods and merchandise consisting principally of COTTON, SEED, MACHINERY, EQUIPMENT, FABRICATED STEEL PRODUCTS, CONSTRUCTION TOOLS, FARM PRODUCTS, HOUSEHOLD FURNITURE AND GENERAL MDSE. caused by any of the perils enumerated below for which loss or damage the assured is liable, either in the absence of or under bills of lading or other shipping receipts. *This insurance attaches and covers the assured's liability*

*with respect to ascertained merchandise only when the same is loaded for shipment and in due course of transit* within the limits of the United States \* \* \*." (emphasis added)

On the second page of the Insurance Contract, its purpose is stated:

"It is the *purpose* of this insurance *to indemnify* the *assured* [plaintiffs] *for their liability as a carrier only to the amount which they are obliged to pay* and do pay *on such merchandise by reason of losses caused as herein defined.*" (emphasis added)

The policy next contains a provision that specifically insured plaintiffs against the overturning of one of its trucks, as has occurred in this action, but then specifically excludes coverage where, "(e) Loss or damage [is] due to inherent vice or loss of time or delay, whether consequent upon a peril insured against or otherwise."

The first condition of the policy, denominated "VALUATION CLAUSE" states:

"All goods and merchandise for which assured's [plaintiffs] liability is insured hereunder are, by agreement, valued at amount of invoice or if not under invoice, than [sic] at cash market value on date and at place of shipment, except however, the liability of this Company shall not exceed the value as shown in shipping list or bill of lading, if any, *nor shall the Company's liability in any event exceed what it would then cost to repair or replace the property lost or damaged with other of like kind and quality.* In any event this Company shall not be liable for a greater proportion of the insured's liability for loss or damage on any insured truck than the amount of insurance on the liability for the contents of the truck bears to 100% of the valuation of the contents of the truck, as provided in this paragraph." (emphasis added)

The above provisions constitute a part of the basic policy. Attached to it are several additional pages which contain, in part, the provisions relied upon by the plaintiffs and which are cited earlier in this opinion. These additional pages will be referred to hereafter as the "Arizona Rider". In addition to those provisions of the Arizona Rider relied on by the plaintiffs, we find the following:

"2. On the Assured's [plaintiffs] legal liability as a common carrier or Assured's [plaintiffs] liability as a contract carrier for loss or damage caused directly by perils insured against hereunder,[1] to lawful goods and merchandise consisting of cotton, seed, machinery, equipment, fabricated steel products, construction tools, farm products, household furniture, general merchandise and other lawful merchandise, while in the custody of the Assured [plaintiffs] and only while contained in or on trucks, tractors or semi-trailers owned, leased or operated by the Assured, within the limits of the United States of America and old Mexico and while held for temporary storage in due course of transit."

\* \* \* \* \* \*

"4. This Company shall not be liable for more than the amount of invoice or if not under invoice, then at actual cash market value at the place of shipment; it is agreed, however, that this Company shall not be liable for more than $25,000 in any one loss or catastrophe, casualty or disaster involving one or more pieces of equipment.

\* \* \* \* \* \*

"6. THIS POLICY DOES NOT INSURE LOSS OR DAMAGE:

(a) To accounts, bills, currency, deeds, evidences of debt, money, notes, securities, or other similar valuables;

(b) To livestock, except in the event of death or injuries rendering destruction necessary, directly caused by perils insured against;

(c) Caused by the neglect of the Assured to use all reasonable means to

---

1. Plaintiffs' quote ended here with the word "hereunder" but the remainder of the paragraph is pertinent to the question on appeal.

save and preserve the property at and after any disaster insured against;

(d) To goods by wet or dampness, or by being spotted, discolored, mouldy, rusted, frosted, rotted, soured, steamed or changed in flavor except the same is the direct result of a peril insured against;

(e) Caused by delay or loss of market;

(f) To eggs except where amounting to 50% each shipping package separately insured; or for any loss or damage to eggs in excess of $200 any one truck;

(g) To the truck, tarpaulins or fittings;"

\*   \*   \*   \*   \*   \*

Additional provisions of the Arizona Rider show that the premium charged for the contract of insurance is based solely on the gross receipts received from the cargo hauled by the plaintiffs. Finally, the Arizona Rider provides that, "[A]ll other terms and conditions [of the basic policy] remain unchanged."

█ Under the rules of construction it is necessary to read the basic policy and the Arizona Rider as a whole to arrive at the intent of the parties. Where a conflict occurs between the two, then the Arizona Rider by its express provision governs. Without engaging in extensive analysis, it appears to us that a reading of the cited provisions of the insurance contract insured the plaintiffs against the loss or damages to lawful goods and merchandise transported on one of their trucks. Two insuring provisions expressly and clearly state this: The insuring provision on the face of the insurance contract, supra, and provision numbered "2" of the Arizona Rider, supra. The "purpose" provision, contained in the basic contract, supra, does not conflict with any provision of the Arizona Rider and is intended to limit liability on the part of the Insurance Co. by providing that its obligation is to indemnify the carrier "only to the amount which they are obligated to pay and do pay on such merchandise by

reason of losses caused as herein defined." See 11 Couch on Insurance 2d, Motor Carrier Cargo Insurance, p. 134 § 42:312 (1963). The valuation of loss provisions are therefore particularly revealing of the intent of the parties. Heretofore, we cited in full the first condition of the basic policy which clearly limited the Insurance Co.'s liability to the invoice value, or, if no invoice, to the cash market values of the merchandise on the date and place of shipment. Additionally, in apparently the vain hope of clarity, it states, " \* \* \* nor shall the [Insurance] Company's liability in any event exceed what it would then cost to repair or replace the property lost or damaged with other of like kind and quality. \* \* \*" The Arizona Rider provision numbered "4", supra, merely restates the invoice basis or the actual cash market value basis of valuation referred to in the basic contract.

█ It will be recalled that plaintiffs' contention is based primarily on the intention manifested by the use of the term "legal liability" in the contract. They argue that this term includes all liability to which the plaintiffs are subject to by the loss, including the loss of the services of the tractor and backhoe. In a similar case, the Kansas Supreme Court ruled that the term "legal liability" as used in a motor carrier's cargo liability policy encompassed the contractual liability which the carrier assumed upon receipt of the cargo from the shipper. Waugh v. American Casualty Co., 190 Kan. 725, 378 P.2d 170 (1963); 7 Appleman, Insurance Law & Practice, p. 201, § 4329 (1962). We agree with Waugh. It is our opinion that reading the policy as a whole reveals the clear intention that "legal liability" refers only to the Insurance Co.'s liability arising from the loss of cargo, which in this case is the tractor and backhoe, and its liability under the insurance contract is limited to the replacement cost of the cargo.

Plaintiffs make the point that paragraphs 4 and 6(e), supra, of the Arizona Rider relied upon by the Insurance Co. must be read as relating to cargo being transported

for sale in a market where lost profits might be involved in delay and not to the transportation of a tractor and backhoe to a construction site. We cannot accept this distinction because the insurance contract does not make it. A reading of 6(e) by itself, without reference to the other cited provisions, might support such a conclusion, but the demonstrated intention revealed by the whole contract refutes it. Certainly paragraph 4, supra, as read with the other provisions cited does not support such a conclusion. Plaintiff also contends that if paragraph 4, together with paragraph 6 which contains the exclusions, are not read in this manner that an ambiguity in the terms results. We disagree. In our opinion the terms of ·the contract are not ambiguous, and we will not indulge in a strained construction in order to raise one. See Annot. 36 ·A.L.R.2d ·506 (Insurance-Motor Carrier Liability) (1954)

·We hold that it is the expressed intention of the insurance contract to insure the plaintiffs against the loss of tractor and backhoe, and that it was not intended to insure them against the loss of the use of that equipment.

## PUBLIC POLICY

In the nature of the historic case of Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 (1963), plaintiffs contend that the provisions of several statutes must be read into the insurance contract, and that their effect will be to . establish the Insurance Co.'s liability for the loss of use of the tractor and backhoe. Plaintiffs first cite 49 U.S.C.A. § 315 (1963). This provision of the law is incorporated within the terms of the insurance contract by a Rider attached to the contract entitled: Endorsement for Motor Common Carrier Policies of Insurance for Cargo Liability under Section 215 of the Interstate Commerce Act. It provides, in part and primarily that the Insurance Co. will. pay, within the limits provided, any shipper or consignee for all loss of or damage to all property belonging to such shipper or consignee, and coming into the possession of the plaintiffs in connection with

its transportation service, for which loss or damage the insured may be held legally liable, regardless of whether the motor vehicles, terminals, warehouses, and other facilities used in connection with the transportation are specifically described or not. In our opinion neither the basic contract nor the Arizona Rider conflict with this provision.

Plaintiffs next raise A.R.S. § 40–611, subsec. A (1956). This section relates to the specific duty imposed on the Corporation Commission, prior to its issuing a certificate or permit to a common or contract motor carrier, to require the submission for their approval of a liability insurance policy which will bind the insured to pay compensation for injuries to persons and for loss or damage to property resulting from the negligent operation of the carrier. Plaintiffs infer that the insurance contract before the Court is the contract required by § 40–611. However, there is nothing before the Court that would properly raise this issue. The presumption at law is that public officials properly perform their express duties. Udall, Arizona Law of Evidence, p. 432, § 194 (1960). In the absence of evidence to support plaintiffs' contention, we can only assume that we are dealing with the provisions of the specific cargo insurance contract which is before the Court. The same can be said for plaintiffs' contention that Arizona Corporation Commission Order No. MV–7 was not complied with. A copy of the order was not made a part of the record, consequently, we cannot consider it. Plaintiffs refer to A.R.S. § 28–1102 and § 28–1142 (1956) of the Uniform Motor Vehicle Safety Responsibility Act. These provisions do not relate to· the issue before this Court and are immaterial.

Finally, plaintiffs cite A.R.S. § 20–255 (1956) which defines Marine and Transportation Insurance. Plaintiffs' purpose for citing this statute is not clear. There can be no argument but that the insurance contract involved herein is one known generally as an Inland Marine Motor Carrier Cargo Liability policy and, as. such, is certainly within the broad limits.

of the definition. The clear intention of A.R.S. § 20-255 is not to impose conditions in an insurance contract but is to define a type of insurance regulated by the State of Arizona. In our opinion the public policy argument cannot be sustained.

## DUTY TO DEFEND

By questions 2 and 3 on appeal, plaintiffs contend that the Insurance Co. owed them a duty to provide the defense in the action brought by the contractor Carr. This contention is based upon two provisions of the insurance contract which are exactly the same, as follows:

"The Assured, whenever requested, shall aid in securing information and evidence and the attendance of witnesses and shall defend any action at law or in equity through such counsel as this Insurance Company may direct, but at this Insurance Company's expense. The Insurance Company shall have the right to settle any claim or suit at its own cost at any time."

Plaintiffs base their argument solely on Lawrence v. Burke, 6 Ariz.App. 228, 431 P. 2d 302 (1967). In the Lawrence case the question concerned the standing of an insurance company to intervene, after a default judgment is entered, in a personal injury action under the provisions of its automobile liability policy. This Court held that the company had standing to intervene and, in part, cited provisions of the policy under which it undertook, " * * * to defend any suit * * *." against the insured as the basis. We then went further and held that under the terms of that policy the insurance company owed the defendants a defense. The same situation does not exist in this appeal. The Insurance Co.'s obligation in this matter, as in Lawrence, must be based on the provisions of the insurance contract. Since we have already held that the insurance contract insured plaintiffs against the loss or damages to lawful goods and merchandise transported on one of their trucks and not for the loss of the services of the destroyed tractor and backhoe, i. e., the rental of a replacement equipment, is there any residual obligation remaining on the part of the Insurance Co. to furnish a defense to plaintiffs after they had settled in full for the destruction of the tractor and backhoe, as they had the privilege of doing under the above cited provision of the insurance contract? We think not. In our recent opinion, Navajo Freight Lines, Inc. v. Liberty Mutual Insurance Co., 12 Ariz.App. 424, 471 P.2d 309 (1970), we cited with approval the test contained in the Annot. 50 A.L.R.2d 458, 464 (Liability Insurer—Duty to Defend) (1956), to-wit:

"If the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume the defense of the action, but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation."

The application of this test to this case defeats the plaintiffs' contention. Here the Insurance Co. settled with the contractor for the destruction of the equipment.[2] When the contractor sued the plaintiffs for the rental on equipment to replace the destroyed equipment, the insurance company refused to defend because the complaint failed to bring the issue within the cargo policy terms. We hold that the Insurance Co. was not obligated to defend the plaintiffs under these circumstances. See Annot. 40 A.L.R.2d 168 (Liability Insurer—Duty to Settle) (1955) ; and Annot. 27 A.L.R.3d 1057 (Liability Insurer—Duty to Defend) (1969).

## SUMMARY JUDGMENT

Plaintiffs' last two questions on appeal deal with the propriety of the trial court's granting the Insurance Co. summary judgment. The first questions whether a

2. The failure of an insurance company in good faith to settle in a clear case, may result in its liability over and above the policy limits. See Farmers Insurance Ex- change v. Henderson, 82 Ariz. 335, 313 P.2d 404 (1957) ; General Accident Fire & Life Assurance Corp. v. Little, 103 Ariz. 435, 443 P.2d 690 (1968).

"bare motion unsupported by controverting affidavits of points of law" can support the award of summary judgment; the answer is in the affirmative. Rule 56(a) and (b), Rules of Civil Procedure, 16 A.R.S., provides that either the claimant or the defending party may move for summary judgment "with or without supporting affidavits." Our review of the record shows that there was no genuine issue as to any material fact concerning the insurance contract or the events resulting in the claim, consequently, where only questions of law remained, the case at bar was properly disposed of by summary judgment.

The final question, whether the trial court erred in not granting plaintiffs' motion for partial summary judgment, has already been adequately discussed heretofore and is answered in the negative.

Judgment is affirmed.

JACOBSON, P. J., and HAIRE, J., concur.