ILLINOIS CENTRAL GULF RAILROAD, Plaintiff-Appellant, v. CONTINENTAL CASUALTY COMPANY, Defendant-Appellee.

First District (1st Division)   No. 84—0275

Opinion filed March 25, 1985.—Rehearing denied April 23, 1985.

Winston & Strawn, of Chicago (R. Lawrence Storms and Edward J. Wendow, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Thomas M. Hamilton, and Fritz K. Huszagh, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

The present action concerns an insurance contract purchased from defendant, Continental Casualty Company (Continental) by plaintiff, Illinois Central Gulf Railroad (ICG) in which Continental promised to indemnify ICG employees who suffered accidental death or serious injury in specified situations. When an employee of ICG was accidently killed and ICG was subsequently forced to pay death benefits to the heirs of the employee under the terms of a pre-existing collective bargaining agreement, Continental denied liability on the ground that the

employee's death was not covered by the policy. ICG then brought a declaratory judgment action against Continental, alleging breach of contract. Continental moved to dismiss the action on the ground it was barred by a contractual limitation clause which provided that "[n]o action *** shall be brought to recover on this policy *** unless brought within three years from the expiration of the time within which proof of loss was required by the policy." The trial court sustained Continental's motion and dismissed ICG's action. ICG now appeals.

ICG contends: (1) that the contractual limitation of actions clause is ambiguous with respect to its action; (2) that even if the clause is unambiguous, its action was filed within the requisite time period and (3) that Continental waived its limitation of actions and cannot revive it.

The record reveals that on February 10, 1971, plaintiff ICG entered into a bargaining agreement with labor organizations representing some of its employees, including members of the Brotherhood of Maintenance of Way (BMW). Under the terms of the bargaining agreement, ICG agreed to pay accident benefits when these employees were killed or injured while "riding in, boarding, or alighting from off-track vehicles authorized by [ICG] and are (1) deadheading under orders or (2) being transported at [ICG's] expense." Nothing in the agreement required ICG to provide the benefits through an insurance policy; the benefits were strictly a potential liability of the employer.

ICG subsequently purchased a group accident insurance policy from Continental in which Continental agreed with ICG, the policyholder, to insure "insured persons" (members of various labor organizations who were employees of ICG) and promised to pay for loss resulting from injury to the extent therein limited and provided. The policy defined "injury" as bodily injury. The policy provided for $100,000 in accidental death benefits to be paid to the insured employees of ICG where death occurred as a result of an "injury sustained in consequence of riding as a passenger or operator in or on, boarding or alighting from any off-track land conveyance for the purpose of deadheading under orders or being transported at the [policyholder's] expense other than as an operator or member of the crew in any conveyance operated for the carriage of passengers for hire." The contract also included a "limitation on actions" clause which stated:

> "No action at law or in equity shall be brought to recover on this policy *** unless brought within three years from the expiration of the time within which proof of loss is required by the policy."

Regarding proof of loss, the policy provided that "[i]n the case of claim for any [loss other than loss of time from disability], written proof of such loss must be furnished to the Company within 90 days after the date of such loss."

On October 30, 1978, the collective bargaining agreement was amended to increase the death benefits from $100,000 to $150,000. The benefits under ICG's policy with Continental were amended so that they conformed with the labor agreement.

On March 25, 1980, Gary Martin, an employee of ICG and a member of BMW, was killed when a truck struck the backhoe he was operating while going from one work site to another. ICG presented a claim under the policy on behalf of Martin's heirs. On June 2, 1980, Continental rejected the claim, asserting that Martin was not deadheading when he was killed. Rather than proceeding against the insurance company under the policy, the heirs of Gary Martin opted for an alternative remedy available under the collective bargaining agreement and Federal labor laws. The BMW, on behalf of Martin's heirs, instituted a grievance procedure pursuant to the Railway Labor Act (45 U.S.C. sec. 153 *et seq.* (1976)) which established the "Railroad Adjustment Board" for settling "minor disputes" between a railroad and its employees. On February 26, 1982, the board ordered ICG to pay $150,000 (less appropriate setoffs) to Martin's heirs, holding that Martin's death came within the terms of the bargaining agreement because he died while he was riding in an off-track vehicle and was being transported at ICG's expense. Following the award, ICG again sought payment under the policy, but Continental denied the claim again on March 31, 1982.

On August 19, 1983, ICG brought this declaratory judgment action. Continental moved to dismiss the action on the ground that ICG's action was barred by the "limitation on actions" clause since its loss was sustained on the date Martin was killed, which was more than three years (plus the 90-day "proof of loss" period) prior to the initiation of suit. The trial court sustained Continental's motion and dismissed ICG's action.

The only issue we need determine on appeal is whether the trial court erred in dismissing ICG's action. ICG maintains that the clause stating the contractual limitation period is ambiguous or, in the alternative, it does not apply to ICG's action, but only to actions brought on the policy by employees and personal representatives.

In reviewing a trial court's order granting a defendant's motion to dismiss a complaint, we must regard ICG's well-pleaded facts and their reasonable inferences as true. *Clear-Vu Packaging, Inc. v. Na-*

*tional Union Fire Insurance Co.* (1982), 105 Ill. App. 3d 671, 674, 434 N.E.2d 365, *appeal denied* (1982), 91 Ill. 2d 567.

In interpreting an insurance policy, the court's primary concern is to effectuate the intent of the parties as expressed by the contract. (*State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 419 N.E.2d 601.) "Insurance policies should be construed as a whole, giving effect to every part, as far as it is possible." (*Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 121, 294 N.E.2d 7, *appeal denied* (1973), 53 Ill. 2d 608.) Any ambiguity in an insurance policy is construed against the insurer, as the insurer drafted the policy. *Kirk v. Financial Security Life Insurance Co.* (1978), 75 Ill. 2d 367, 389 N.E.2d 144.

■■ The Illinois Supreme Court has pointed out: "An insurance policy is not to be interpreted in a factual vacuum; it is issued under given factual circumstances. What at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued." (*Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336, 312 N.E.2d 247.) In determining if an ambiguity exists, the court should consider the subject matter of the contract, the facts surrounding its execution, the situation of the parties and the predominate purpose of the contract which is to indemnify the insured. *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 400 N.E.2d 921; *State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 430 N.E.2d 641, *appeal denied* (1982), 91 Ill. 2d 565.

In the case at bar, Continental characterized the insurance policy in question as a "group accident indemnity policy" under which ICG was the policyholder who paid the premiums. Employees of ICG who were members of named labor organizations were the insured persons under the policy. Continental agreed to pay benefits for losses resulting from bodily injuries suffered by these employees. All indemnities were payable to the employees or their beneficiaries upon proof of the occurrence for which the claim is made. There is no provision which indicated that ICG was an insured person under the policy or that it was entitled to collect benefits. There was nothing in the policy to indicate that benefits would be paid to ICG if it was found liable to an injured employee by reason of the collective bargaining agreement or for any other reason.

Courts have recognized that:

> "Unlike the ordinary policy situation where the policyholder is also the insured, the group insurance policyholder is the employer who merely derives certain incidental good will benefits

in his relationship with his employees by virtue of the policy, but he is neither the insured nor the beneficiary of the coverage which the contract of insurance undertakes to provide. It is, instead, the employees who are the insureds and who directly benefit under the terms of the policy. \*\*\* Since the employer-policyholder acquires only peripheral benefits, it is to be expected that he will be most concerned with obtaining the insurance at the lowest possible cost. The employee insureds, on the other hand, will be more concerned with the protective aspects of the policy." (*Fidelity & Casualty Co. v. Metropolitan Life Insurance Co.* (Sup. Ct. 1963), 42 Misc. 2d 616, 628-29, 248 N.Y.S. 2d 559, 570-71.)

In the case at bar, it is the employer who is concerned with the protective aspects of the policy. Neither our research nor that of the parties has uncovered any case which deals with rights of the employer to enforce the protective provisions of this type of group insurance.

■ Group insurance contracts in which the employee is the insured have been construed as creating a contract between the employer and the insurer for the benefit of the insured employees and not for the benefit of the one procuring the group policy. (44 Am. Jur. 2d *Insurance* sec. 1842 (1982).) Courts in other jurisdictions have held that an employer may not be the real party in interest in suits for the disbursement of benefits under such a policy. (See *Norby v. Bankers Life Co.* (1975), 304 Minn. 464, 231 N.W.2d 665; *Key Life Insurance Co. v. Taylor* (Tex. Civ. App. 1970), 456 S.W.2d 707, 709; *Mutual Benefit Health & Accident Association v. Bullard* (1960), 270 Ala. 558, 565-66, 120 So. 2d 714, 721-22; see also 44 Am. Jur. 2d *Insurance* sec. 1850 (1982).) Illinois law is unclear on this point. (See *Mayfair Construction Co. v. Security Insurance Co.* (1977), 51 Ill. App. 3d 588, 366 N.E.2d 1020.) Therefore, the parties could not have incorporated industry custom or a common understanding regarding the rights of a policyholder under this type of group insurance as a means to clarify ICG's rights under the limitation clause. (See *Nabor v. Occidental Life Insurance Co.* (1979), 78 Ill. App. 3d 288, 396 N.E.2d 1267; *Caster v. Motors Insurance Corp.* (1961), 28 Ill. App. 2d 363, 171 N.E.2d 425.) But, regardless of the exact perimeters of a policyholder's rights under a group policy, ICG is clearly a primary contracting party to this group insurance contract and, as such, retains rights under its contract with Continental by virtue of its payment of premiums in consideration for Continental's promise to provide insurance for its employees. (See 4 A. Corbin, Contracts sec. 812 (1951).)

The fact remains that the right of ICG to enforce the protective provisions of the policy is not clearly spelled out in the insurance contract. Given the legal uncertainty surrounding the position of a policyholder of this type of group insurance and the lack of clarity regarding ICG's rights under the policy, we believe that an honest ambiguity exists concerning the impact of the contractual limitation clause on ICG's right to enforce the protective provisions of the policy.

Continental maintains that the limitation clause is clear and must be enforced according to its plain language. However, an analysis of the plain language of the clause demonstrates its ambiguity. The clause limiting the time in which actions may be brought refers to actions "brought to recover on this policy." However, ICG's action is not an action to recover on the policy. An action on a promise to provide insurance may be distinct from an action on an insurance policy. (*Irvin v. Metropolitan-Hibernia Fire Insurance Co.* (1928), 247 Ill. App. 562, 566; see also *De Luxe Motor Stages v. Hartford Accident & Indemnity Co.* (1967), 88 Ill. App. 2d 188, 193, 232 N.E.2d 141; *Lawrence v. Massachusetts Bonding & Insurance Co.* (Sup. Ct. 1916), 160 N.Y.S. 883, 895.) Moreover, contractual limitation periods generally do not apply to "different or collateral actions involving, in some measure, the policy proceeds or growing out of the insurer's duties to the insured." (*Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 309, 393 N.E.2d 1223, *appeal denied* (1979), 79 Ill. 2d 620; see also 20A Appleman, Insurance Law & Practice sec. 11603 (1980).) Inasmuch as ICG is not seeking policy proceeds and is not an insured, its action is collateral to an action for the policy proceeds or growing out of the insurer's duties to the insured.

In the case at bar, ICG is not attempting to recover on the policy because the death benefits are payable under the policy to ICG's employees, who are the insured persons and the only parties entitled to collect these benefits. The limitation in the policy is by its plain terms intended to cover an action for the policy proceeds. But Continental is not faced with a claim made on behalf of the deceased employee for the indemnification due under the policy. ICG paid the claim of the deceased employee under the terms of its collective bargaining agreement. ICG is suing in its own right for damages caused by Continental's alleged breach of its promise to provide insurance coverage to ICG's employees and not for the benefits enumerated in the policy. Inasmuch as the limitation clause applies only to actions brought to recover indemnification due to insured employees under the policy, while, on the contrary, this action is brought to recover damages for

breach of the underlying promise to provide insurance coverage, the present action is not clearly subject to any limitation provided in the policy.

In addition, Continental obviously felt some confusion regarding ICG's right of action under the policy. At one time prior to the present action, Continental "indicated that the suit might have to be filed by the individual to be valid." Continental has since changed its position, but this merely highlights the uncertainty surrounding ICG's rights with respect to the policy.

Continental also argues that ICG may not recover because the "loss" which ICG now claims is not a loss covered by the policy. Even if true, it is irrelevant since ICG is suing as a party to the insurance contract and not as an insured under this policy. Authorities have recognized that the liability of the insurer on its contract of insurance is distinct from the liability which may arise by virtue of its breach of that contract. (18 Couch on Insurance sec. 74.98 (2d ed. 1983); see also *Bartkowski v. Commercial Casualty Insurance Co.* (1934), 275 Ill. App. 497.) Moreover, Continental's argument that the loss which ICG now claims is not a loss covered by the policy bolsters our conclusion that ICG's action is not an "action to recover on this policy."

For the above-stated reasons, we find the clause limiting the time within which actions may be brought to recover on the policy to be ambiguous. Consequently, it must be construed against Continental, the insurer and drafter of the policy. (*Kirk v. Financial Security Life Insurance Co.* (1978), 75 Ill. 2d 367, 389 N.E.2d 144.) We hold that ICG's action is not barred by the "limitation on actions" clause in the policy.

In its complaint for declaratory judgment, ICG asked the court to declare that Continental had breached its contract with ICG. While it is within the power of the court to make a binding declaration of the parties' rights (Ill. Rev. Stat. 1983, ch. 110, par. 2—701(a)), we cannot make such a determination based on the record now before us. We believe that a hearing should be held in order to determine the parties' intentions as to the coverage of the policy and whether Continental breached its contract with ICG. Therefore, the judgment of the trial court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

McGLOON, P.J., and BUCKLEY, J., concur.