SONOCO BUILDINGS, INC., a DIVISION OF SONOCO PRODUCTS COMPANY, Plaintiff–Appellee,

v.

AMERICAN HOME ASSURANCE COMPANY, Defendant–Appellant.

No. 88–1398.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1989.

Decided June 27, 1989.

was excluded from coverage because it was caused by delay and that, even if the loss was not excluded, American did not receive timely notice of the loss. We affirm in part and reverse in part.

## I. FACTS

On May 1, 1984 Sonoco contracted with Western Transport Crane and Rigging (Western Transport) to deliver fourteen bundles of twenty-six gauge galvalume panels from Waukesha, Wisconsin to Noel, Missouri. A bill of lading, naming Western Transport as the carrier and stipulating that the panels were to be delivered by 2:00 p.m. on May 3, 1984, was issued. Time was of the essence because a construction crew awaited the shipment. Western Transport co-brokered with Nationwide Transport, Inc. (Nationwide), who in turn contracted with Thunderbird Motor Freight Lines, Inc., (Thunderbird), to carry the panels to Missouri.

Thunderbird picked up the panels at Sonoco's premises on May 1, 1984. On July 11, 1984 the builder in Missouri notified Sonoco that the panels had not yet arrived. After Western Transport confirmed that the panels could not be located, Sonoco manufactured and shipped new panels to replace those that were missing. On approximately December 20, 1984 Sonoco discovered that the panels were unharmed and sitting in Thunderbird's truck yard in South Roxana, Illinois. Sonoco refused to accept the panels back, however, claiming that the panels were specifically designed for the Missouri job and were now useless.

On April 23, 1985 Sonoco sued Western Transport, Nationwide, Thunderbird, and United States Fidelity and Guaranty Company to recover $30,115.36, the replacement cost and penalties for late shipment. Eventually all defendants were dismissed except Thunderbird. The trial court granted Sonoco summary judgment against Thunderbird on October 26, 1986, even though Thunderbird had shut down business in October 1985.

Mark D. Koss, Kasdorf Lewis & Swietlik, S.C., James M. Ryan, Milwaukee, Wis., for defendant-appellant.

Russell M. Lein, Howard Peterman Solochek Grodin & Nashban, S.C., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and WILL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal involves a cargo of building construction panels transported from Wisconsin to Missouri pursuant to a shipping contract in which time was of the essence. The panels never reached the Missouri construction site but turned up five months later in an Illinois truck depot. Sonoco Buildings, Inc. (Sonoco), the panels manufacturer, sued American Home Assurance Company (American), the carrier's insurer, for the loss. The district court granted summary judgment in favor of Sonoco. American appeals, claiming that the loss

---

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

During the course of litigation, however, on approximately April 30, 1986, attorneys stating that they represented Thunderbird's insurer contacted Sonoco's attorneys but did not identify the insurer. Thereafter, Sonoco sent copies of its motion for summary judgment and brief to the insurer's attorneys. Eventually the attorneys identified defendant American as the insurer by sending Sonoco a copy of American's insurance policy that covered the defunct Thunderbird.

On January 16, 1987 Sonoco sued American claiming that, as Thunderbird's insurer, American was responsible for the expenses incurred with regard to the lost panels. American moved to dismiss the complaint on the grounds that it had not received proper notice of the loss and that the policy did not cover the loss because the panels were eventually recovered. Sonoco, in response, filed a motion for summary judgment. The district judge granted Sonoco summary judgment on February 4, 1988 in the amount of $30,115.36. American appeals.

## II. ANALYSIS

### A. The Conflicts of Law Issue

Before we reach the merits of American's appeal, we first must determine which state's laws to apply in this diversity suit. Sonoco argues that the insurance contract entered into by Thunderbird and American expressly provides that we should apply the law of the state where the policy was issued, in this case—Texas. American contends that Illinois law is applicable.

■ Sonoco chose Wisconsin as the forum for this lawsuit, therefore we apply Wisconsin's conflicts of law rules. *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir.1981); *see also SCA Services, Inc. v. Lucky Stores*, 599 F.2d 178, 180 (7th Cir.1979). Under Wisconsin law, the parties to a contract may expressly agree that the law of a particular jurisdiction will control the contractual relationship. *First Wisconsin Nat'l Bank v. Nicolaou*, 85 Wis.2d 393, 397 n. 1, 270 N.W.2d

582, 584 n. 1 (Ct.App.1978), *appeal dismissed*, 87 Wis.2d 360, 274 N.W.2d 704 (1979). Sonoco is correct that the insurance policy was issued in Texas, but the insurance policy provision cited by Sonoco does not indicate that the parties stipulated to Texas as the source of law for interpreting the terms of the policy. The provision cited by Sonoco merely indicates an intent to avoid inconsistencies between the *statutory* laws of the state in which the policy was issued and the terms of the policy. The insurance policy provision states:

> Conformity to Statute: Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

We do not infer from this provision that American and Thunderbird intended to adopt Texas' common law. Sonoco has not directed us to any Texas statute that speaks on the issues raised; the provision therefore is irrelevant in determining which state's laws to apply in this diversity action.

If there is no contractual provision indicating a choice of law preference, Wisconsin uses a "significant contacts" approach that emphasizes both the quality and quantity of the contacts between the subject matter of the lawsuit and a particular state. *See Belland v. Allstate Ins. Co.*, 140 Wis.2d 391, 397–98, 410 N.W.2d 611, 613–14 (Ct.App.1987). The factors that Wisconsin directs us to consider include the place of contracting, the place of performance, the location of the subject matter of the contract, the place of business of the parties, and the law under which the contract will be most effective. *Belland*, 140 Wis.2d at 397, 410 N.W.2d at 614.

■ Considering these factors, we believe that Illinois is the appropriate source of law. Thunderbird's insurance contract was issued in Texas but was delivered to Illinois. Illinois was also the location of the insured Thunderbird's headquarters, truck depot, and the site at which the panels were finally located. In comparison, other states have only limited contacts with the insurance contract at issue. New York

is American's principal place of business; Wisconsin is the home of Sonoco (who was not a party to the insurance policy but now seeks recovery); and Missouri was the intended destination for the panels. Out of all these contacts, we consider the most pertinent to be the insured's place of business and the likely location of the subject matter of the contract. Because Thunderbird was located in Illinois and most of its trucks and their contents probably travelled through or were stored in Illinois, we look to Illinois law to interpret the insurance contract.

### B. Loss or Loss Due to Delay

The district court entered summary judgment in favor of Sonoco. The district court may enter summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). See Greer Properties, Inc. v. LaSalle Nat'l Bank, 874 F.2d 457, 459 (7th Cir.1989). Furthermore, the Illinois Supreme Court has stated that "when facts are undisputed, the question of whether those facts fall within the provisions of an insurance policy is a matter of interpretation, the province of the court rather than the fact finder." United Farm Bureau Mut. Ins. Co. v. Elder, 86 Ill.2d 339, 342–43, 56 Ill.Dec. 47, 49, 427 N.E.2d 127, 129 (1981); see also Uhwat v. Country Mut. Ins. Co., 125 Ill.App.3d 295, 303, 80 Ill.Dec. 618, 624, 465 N.E.2d 964, 970 (1984). In reviewing a summary judgment, we view the record and the inferences drawn from it in the light most favorable to the nonmoving party. Schlifke v. Seafirst Corp., 866 F.2d 935, 937 (7th Cir.1989). We review de novo the district court's entry of summary judgment. Greer Properties, 874 F.2d at 459.

American argues that the costs incurred when Thunderbird failed to deliver the panels to the Missouri construction site are losses due to delay that are excluded from coverage; Sonoco argues that the panels were simply lost and, therefore, covered by the policy. The insurance policy covers loss but specifically excludes loss caused by delay; yet it fails to define either term.

If provisions of an insurance policy are clear and unambiguous, the court must enforce them according to their plain meaning. Uhwat, 125 Ill.App.3d at 302, 80 Ill. Dec. at 624, 465 N.E.2d at 970. Where an insurance policy is subject to more than one reasonable interpretation, however, it is ambiguous and must be construed against the insurer. Economy Fire & Casualty Co. v. Kubik, 142 Ill.App.3d 906, 909, 97 Ill.Dec. 68, 70, 492 N.E.2d 504, 506 (1986). The Illinois Supreme Court has noted, "An insurance policy is not to be interpreted in a vacuum; it is issued under given factual circumstances. What at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued." Glidden v. Farmers Auto. Ins. Ass'n, 57 Ill.2d 330, 336, 312 N.E.2d 247, 251 (1974). In determining whether an ambiguity exists, we consider the subject matter of the policy, the facts surrounding its execution, the situation of the parties, and the predominate purpose of the policy, which is to indemnify the insured for loss. Illinois Central Gulf R.R. v. Continental Casualty Co., 132 Ill.App.3d 310, 313, 87 Ill.Dec. 274, 278, 476 N.E.2d 1266, 1268 (1985).

The policy provisions at issue are ambiguous. The insurance policy does not define the term "loss" or the phrase "loss or damage caused by or resulting from delay." Loss caused by delay, a subset of losses in general, takes away coverage that the policy's general provision gives. The overlap between the two terms and the amorphous nature of the term "delay" make it difficult for us to determine when a loss, which is initially covered, becomes unprotected. If the property at issue is misplaced for eight years and then recovered, is it still delayed? Do we consider whether the parties were aware that the property was only delayed? What meaning do we give to the term "loss"? These uncertainties require that we consult other

sources to interpret the terms used in the policy.

As both parties and the district court noted, there is a dearth of case law on the meaning of "loss" or "loss caused by or resulting from delay" in the present context. American asserted in the district court that the Wisconsin court in *RTE Corp. v. Maryland Casualty Co.*, 74 Wis. 2d 614, 624, 247 N.W.2d 171, 176 (1976) defined "loss" as "the state or fact of being destroyed or placed beyond recovery," but the district judge correctly pointed out that the Wisconsin court did not intend the definition to be all-inclusive. We agree with the district court that "loss" is not limited in meaning to destruction or damage. *Compare* Webster's New International Dictionary, definition 3b ("a yardage disadvantage in football that results when an offensive play ends behind the line of scrimmage") *and* definition 2b ("power or energy wasted in a machine, apparatus, or system"). The district court noted that Webster's New International Dictionary provides "deprivation" as the most common meaning for the term "loss." The district court added that a reasonable person, reading the policy and substituting "deprivation" for the term "loss," could assume that the policy covered misplaced shipments.

The Illinois courts have suggested that a loss occurs when "something happens which can result in a liability claim." *St. Paul Ins. Co. v. Armas*, 173 Ill.App.3d 669, ——, 123 Ill.Dec. 283, 286, 527 N.E.2d 921, 924 (1988); *see also Reserve Ins. Co. v. General Ins. Co.*, 77 Ill.App.3d 272, 277–78, 32 Ill.Dec. 552, 556, 395 N.E.2d 933, 937 (1979) ("loss" refers to a condition in which the insured would be subject to a claim out of which legal liability might arise, not an adjudicated liability). "Something happened" in this case when the panels failed to arrive at the Missouri construction site on May 3, 1984 as required by the shipping contract. At that point in time Sonoco and the manufacturer were deprived of the panels and Thunderbird became legally responsible for the missing panels. Thunderbird did not know where the panels were, or if they still existed, and Sonoco was obligated

to proceed as though the panels had been destroyed because time was of the essence. The panels' failure to arrive was a loss.

We strictly construe exclusionary provisions against the insurer. *Playboy Enter. v. St. Paul Fire & Marine Ins. Co.*, 769 F.2d 425, 428 (7th Cir.1985). Exclusionary provisions are enforced only where their terms are clear, definite, and explicit. *Economy Fire & Casualty*, 142 Ill.App.3d at 909, 97 Ill.Dec. at 70, 492 N.E.2d at 506. Here we believe a reasonable person would read the term "delay," undefined in the policy, as applying to delays of reasonable length under the circumstances. It would be an extraordinary and adhesive provision if the insurer could exclude losses due to delays that spanned years or, in this case, months when time was of the essence and the whereabouts of the insured goods was completely unknown at the time the goods were needed. Here the parties did not know that the goods still existed until five months after they were needed. That is not a reasonable delay. We therefore find that the cost to replace the panels is an expense that is not excluded by the terms of the insurance policy.

The $7,676.42 in back charges that Sonoco was required to pay because the panels did not arrive on time, however, are a different matter. Those fees were penalties for the actual delay in time from when the panels were expected and when the replacements finally arrived. Sonoco makes only weak attempts to defend the district court's award of the late fees under the insurance policy. Because those penalties come squarely within the meaning of losses due to delay, we find that they are not covered by the insurance policy.

This decision is in keeping with the Arizona decision in *Cagle v. Home Ins. Co.*, 14 Ariz.App. 360, 483 P.2d 592 (1971), relied upon by American. In *Cagle* the insurance company paid in settlement the fair market value of a tractor and backhoe that were destroyed while being transported to a construction site. The insurance company, however, refused to pay the cost to rent a replacement tractor and backhoe, claiming that the policy did not cover losses due to

loss of services. *See* 14 Ariz.App. at 361, 483 P.2d at 593. The policy also excluded losses due to delay. The Arizona court agreed with the insurance company. Like the court in *Cagle,* we find that losses due to the inconvenience caused by time delays are excluded by the policies at issue. The deprivation of the goods insured, however, is not a loss due to delay but simply a loss.

### C. Notice "As Soon As Practical"

Before we conclude that the insurance policy covered the loss of the panels, we need to consider whether the conditions for coverage under the policy were met. We turn then to the question of notice. American claims that it failed to receive notice "as soon as practical" of the lost panels and that it never received written proof of loss within ninety days as required by the policy. Under the general terms of Thunderbird's insurance policy the insured was obligated to give notice to American "as soon as practical" following a loss. The insurance policy also contained an attachment, which we refer to as the Motor Carrier Endorsement (or Endorsement). The Motor Carrier Endorsement, attached to the insurance policy in compliance with section 215 of the Interstate Commerce Act, states that an insurer may not deny coverage if the insured fails to satisfy conditions precedent but limits the amount of recovery, if the insured chooses to exercise its rights under the Endorsement, to $5,000.00 per shipload.

#### 1. Waiver

■ Sonoco argues that American waived its opportunity to contest the sufficiency of the notice when it admitted that failure to notify did not preclude coverage under the Motor Carrier Endorsement. The district court agreed that American conceded the point. American, however, denies that it conceded this point with regard to the entire sum of the loss and asserts that it only acquiesced on the issue of notice if the district court limited recovery to $5,000.00.

We do not believe that American waived its notice argument. American made an inartful transition in its response to Sonoco's motion for summary judgment. American stated, "We acknowledge this Endorsement would preclude American from relying on failure of the notice of loss and proof of loss as against plaintiff Sonoco" to explain why it was limiting its reply to the issue of loss. In addition to making this hasty transition in its reply brief, however, American argued the notice issue in its brief to support the motion to dismiss and provided a copy of the Motor Carrier Endorsement to the district court. American's prior argument and allusion to the Endorsement indicate that American did not intend to waive the notice issue. We therefore reject Sonoco's waiver argument.

#### 2. Excusable Delay

■ Although American avoids the waiver argument, its challenge to the timeliness of the notice is nevertheless troubling. American suggests that it did not receive notice until it was sued in January 1987 but it does not refute Sonoco's claim that American's attorneys contacted Sonoco by April 30, 1986 with regard to Sonoco's pending lawsuit against Thunderbird. At first American's attorneys would not identify their client and Sonoco sent copies of its motion for summary judgment and brief to American's attorneys. By contacting Sonoco in the midst of Sonoco's suit against Thunderbird, American demonstrated that it was fully aware of its potential liability some time prior to April 30, 1986. How much earlier we do not know, but we are concerned that American now hides behind an argument that notice was not timely when American obviously received notice sooner than it admits and, through its own efforts, prevented Sonoco from providing more expedient notice.

Illinois courts have recognized, with regard to liability insurance, that the insurer has a duty to come forward and defend the insured even if there is doubt as to whether the insurance policy covers the matter at issue. *Associated Indem. Co. v. Insurance Co. of North America,* 68 Ill.App.3d 807, 815, 25 Ill.Dec. 258, 264–65, 386 N.E. 2d 529, 535–36 (1979). *See also Reis v.*

*Aetna Casualty & Sur. Co.,* 69 Ill.App.3d 777, 782, 25 Ill.Dec. 824, 828, 387 N.E.2d 700, 704 (App.Ct.1978) ("In Illinois, a liability insurer in doubt over whether it has a duty to defend its insured, cannot simply stand on the sidelines and wait until the tort action is completed before contesting the question of coverage."); *Aetna Casualty & Sur. Co. v. Coronet Ins. Co.,* 44 Ill.App.3d 744, 748, 3 Ill.Dec. 371, 374, 358 N.E.2d 914, 917 (1976) ("in Illinois, the insurer is obligated to defend an action brought against a putative insured where the complaint in that action sets forth a situation which would potentially be covered by the policy"). The Illinois courts have held that the insurer is equitably estopped from raising defenses under the insurance policy against third parties (usually another insurer) if the insurer had a duty to come forward but refused to defend the suit. *See Aetna Casualty & Sur. Co.,* 44 Ill. App.3d at 748, 3 Ill.Dec. at 374, 358 N.E.2d at 917. The insurer has a duty to come forward if the complaint alleges facts that fall within the terms of the policy. *See Associated Indem.,* 68 Ill.App.3d at 815, 25 Ill.Dec. at 265, 386 N.E.2d at 536.

This line of cases, while not addressing facts identical to those before us, indicates that Illinois courts do not favor an insurer's attempt to avoid its obligations to the insured if the insurer is aware that the situation may potentially meet the terms of the insurance policy. Here we do not address whether American had a duty to defend Thunderbird in the suit between Sonoco and Thunderbird. If American had come forward when it actually knew of its potential liability, however, Sonoco would have been able to more adequately comply with the policy conditions. *See Vasilakis v. Safeway Ins. Co.,* 46 Ill.App.3d 369, 374, 5 Ill.Dec. 1, 3–4, 361 N.E.2d 1, 3–4 (1977) ("While a long delay in asserting a policy defense or disclaimer is normally not enough to constitute an estoppel or waiver, such delay is an important factor to be considered where there is evidence of prejudice"). We would also know exactly when American received notice. As it is, American hides behind its own failure to admit when it actually learned of Sonoco's claim

in order to argue that notice was not timely.

Given these unusual circumstances, how do we address American's contention that notice was not received as soon as practical? According to the Illinois courts, the phrase "as soon as practical" in notice provisions means that the insurer must receive notice of a loss within a reasonable time. *Casualty Indem. Exch. v. Village of Crete,* 731 F.2d 457, 458 (7th Cir.1984); *Fletcher v. Palos Community Consol. School Dist.,* 164 Ill.App.3d 921, 926, 115 Ill.Dec. 838, 842, 518 N.E.2d 363, 367 (1987). Whether the insurer received notice in a reasonable time generally depends on all the facts and circumstances of the case. *Casualty Indem. Exch.,* 731 F.2d at 458; *Simmon v. Iowa Mut. Casualty Co.,* 3 Ill.2d 318, 321–22, 121 N.E.2d 509, 511 (1954). Likewise the Illinois courts permit actual notice from a third party, in this case the injured party, to satisfy the notice requirement. *Casualty Indem. Exch.,* 731 F.2d at 458; *Rivota v. Kaplan,* 49 Ill.App.3d 910, 920, 7 Ill.Dec. 176, 184, 364 N.E.2d 337, 345 (1977). The injured party, however, has no greater right of recovery than the insured against its insurer. *Lynn v. Village of West City,* 36 Ill.App.3d 561, 563, 345 N.E.2d 172, 174 (1976).

In examining situations in which notice is delayed, Illinois courts consider whether a delay in giving notice was excusable. "A lengthy passage of time is not an absolute bar to coverage provided the insured has a justifiable excuse for the delay." *McFarlane v. Merit Ins. Co.,* 58 Ill.App.3d 616, 619, 16 Ill.Dec. 176, 177–78, 374 N.E.2d 951, 952–53 (1979); *Illinois Valley Minerals Corp. v. Royal–Globe Ins. Co.,* 70 Ill. App.3d 296, 299, 26 Ill.Dec. 629, 631, 388 N.E.2d 253, 255 (1979). Further, Illinois courts will consider whether the insurer was prejudiced but will not permit a lack of prejudice to compensate for inexcusable delay. *Fletcher,* 164 Ill.App.3d at 928, 115 Ill.Dec. at 843, 518 N.E.2d at 368.

"If there are no disputed material facts, the court may in appropriate circumstances decide the issue of reasonable notice as a matter of law." *Casualty Indem. Exch.,*

731 F.2d at 458; *Fletcher*, 164 Ill.App.3d at 926, 115 Ill.Dec. at 842, 518 N.E.2d at 367. Because neither party contests the factual record that the district court relied upon, we may determine whether notice was given "as soon as practical" as a matter of law.

Given American's own participation in delaying notice, we find that the delay in notice to American was excusable. Sonoco notified Thunderbird when the panels failed to arrive at the Missouri construction site and demanded in writing that Thunderbird compensate Sonoco for the loss. Sonoco pursued its claim against Thunderbird and notified American of its claim when it discovered that American insured Thunderbird—approximately twenty-one months after the panels were lost. American knew of its potential liability when it contacted Sonoco during the lawsuit pending against Thunderbird. Sonoco's lack of knowledge regarding American's identity and its diligence once it learned American's identity, coupled with American's own reluctance to admit when it received actual notice, provide an excuse for the delay in notice. *See Charter Oak Fire Ins. Co. v. Snyder*, 22 Ill.App.3d 350, 356, 317 N.E.2d 307, 311 (1974) (lack of knowledge concerning the existence of a policy is an important consideration in determining whether notice was diligently given). Sonoco apparently did all it could to ensure that American was timely notified of its potential responsibility.

Furthermore, we reject American's claim that it need not cover the loss because it did not receive proof of loss as required by the policy. The Illinois courts have found that, by providing notice that identifies the loss or injury, the time it occurred, and various details of the incident, the injured party satisfies the proof of loss provision of an insurance policy. *Simmon v. Iowa Mut. Casualty Co.*, 3 Ill.2d 318, 121 N.E.2d 509 (1954). The brief and motion provided by Sonoco to American's attorneys provided such particulars.

### III.  CONCLUSION

One final matter needs to be considered. The policy provides for a $5,000.00 deduct-

ible but the district court did not consider the deductible in its decision. Sonoco again unconvincingly argues that American waived its opportunity to challenge this defect in the district court by not raising it. We find the waiver argument to be meritless because American's position throughout the suit has been that it owes no money to Sonoco. For American to argue that the district court consider the deductible would have been inconsistent. Therefore, we affirm the district court's decision with regard to the award of $17,438.94 (the replacement cost minus the deductible) to Sonoco and reverse the district court's decision with regard to the back charges of $7,676.42 for the late arrival of the panels. We remand to the district court with instructions to enter summary judgment in Sonoco's favor for $17,438.94. Each party shall bear its own costs.